JOINT SCHOOL DISTRICT NO. 2, and others, Petitioners-Appellants, v. STATE APPEAL BOARD as constituted under Section 117.03(2), Stats., Respondent.

*No. 76–279. Argued April 3, 1978.—Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 374.)

712

For the appellants there were briefs by *Laurence C. Hammond, Jr., Matthew J. Flynn,* and *Quarles & Brady,* and oral argument by *Mr. Hammond,* all of Milwaukee.

For the respondent the cause was argued by *John William Calhoun,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Max C. Ashwill,* legal counsel, Wisconsin Department of Public Instruction.

DAY, J. This is an appeal from an order and a judgment of the Waukesha circuit court. The order granted summary judgment to the respondent state appeal board[1]

---

[1] The board is appointed by the state superintendent of schools and is empowered under sec. 117.03, Stats. (1975) to hear appeals in disputed school reorganizations.

(hereafter board) in a school reorganization case. The judgment dismissed the petitioners' appeal from the board's order of reorganization. The petitioner-appellant elementary school boards and individuals (hereafter petitioners) represent school districts and various other residents in the Hartland-Arrowhead-Merton Union High School District of Waukesha County. The petitioners oppose school reorganization and seek a referendum on the subject.

There are three principle issues on this appeal:

1. Is summary judgment an appropriate remedy in school reorganization appeals?

We hold that it is.

2. Did the board act arbitrarily and capriciously in reorganizing the school district?

We hold that it did not.

3. Did the Board have authority to order a referendum?

We hold that it did not.

Other issues raised will be dealt with in the opinion.

On September 21, 1973 various residents (other than petitioners) of the Hartland-Arrowhead Union High School district of Waukesha county petitioned Cooperative Educational Service Committee No. 16 (hereafter C.E.S.A.)[2] for school reorganization. The proponents of reorganization asked that nine elementary schools and the union high school in the district be combined into a unified kindergarten through twelfth grade (hereafter K–12) school district. The original petition before C.E.S.A. is not in the record, but the proponents of reorganization at the board's meeting strongly implied that a referendum was also asked for in the original petition.

Many area residents at the C.E.S.A. hearing on October 17, 1973 gave their views for and against reorganization. Following this testimony a vote of the members

---

[2] C.E.S.A. is the agency school committee that may order school reorganization at the local level. Sec. 117.02(1)(a), Stats. (1975).

of the school boards of the affected ten districts was taken. Seven boards voted against reorganization and three boards voted for it. A total of thirty-three board members opposed reorganization and thirteen favored it. On October 17, 1973, C.E.S.A. denied the petition for reorganization. The order did not mention anything about a referendum.

On November 8, 1973 proponents of K–12 reorganization appealed to the board. Richard Manke, who appealed the C.E.S.A. order to the board stated at the board's hearing that the relief he desired from the board was a referendum on the issue of school reorganization. There was testimony at the board's hearing that three previous referenda on school reorganization had been defeated.[3] The board's hearing record shows that it was of the opinion that the board could only grant or deny reorganization and could not modify the C.E.S.A. order and remand for a referendum. On February 7, 1974 the board ordered K–12 reorganization in the Hartland-Arrowhead district.

On March 5, 1974 the petitioners appealed the board's order to the Waukesha Circuit Court. The board moved for summary judgment in the circuit court on March 29, 1974. On July 5, 1974 the circuit court denied the motion for summary judgment because parts of the board's proceedings could not be transcribed and the circuit court could not determine whether the board's actions were arbitrary and capricious.

The board appealed to this court from the order denying summary judgment. That appeal was dismissed for lack of an appealable order.

---

[3] According to testimony at the hearing the votes were as follows: (1) April 7, 1964, 696 for reorganization and 2,182 against; (2) August 20, 1968, 780 for reorganization and 1,222 against; (3) May 16, 1972, 1,102 for reorganization and 1,521 against. Rose Geason who testified concerning these figures also presented a petition of 1,359 persons who opposed reorganization.

Following remand the circuit court was supplied with more complete transcripts and on reconsideration granted summary judgment for the board.

The petitioners appeal from the order granting the board summary judgment and from the judgment dismissing their appeal from the board's order of reorganization.

## Applicable Statutes.

"Sec. 117.01. **General Provisions.** . . . (2) (c) A certified copy of any order reorganizing a school district or denying such reorganization shall be filed within 10 days after it is made with the secretary of the agency school committee in which the proposed reorganized school district lies. Upon receipt of the order, the secretary of the agency school committee immediately shall place thereon the date upon which it was received and, within 5 days after receipt thereof, shall send by certified mail a certified copy of the order together with a certification of the date of mailing of the copy to the clerk of each school district, town, village, city and county affected and to the state superintendent. When the territory of a proposed reorganized school district lies within more than one cooperative educational service agency, the order shall be filed with the secretary of the agency school committee of the agency in which the largest area of the reorganized district lies and that secretary shall mail certified copies thereof to the state superintendent, the clerks named in this paragraph and the secretary of the agency school committee of each other agency affected.

"(d) The appeal and referendum period shall run from the date the certified copies of the order are mailed by the secretary. When the results of a referendum have been canvassed, the proper clerk shall certify the results to the secretary of the agency school committee with whom the order was filed, and the secretary shall notify the officers who received a copy of the order of the results of the referendum."

"Sec. 117.02. **Reorganization By Agency School Committee.** . . . (4) REFERENDUM. (a) If within 30 days

after the date of mailing of an order of school district reorganization issued under this section, a petition requesting a referendum on the order and signed by a sufficient number of the electors of the territory included in the proposed reorganized school district is filed under par. (c), the order shall not become effective until it has been approved at the referendum . . ."

"117.03. **State Appeal Board.** (1) (a) Any person aggrieved by an order of an agency school committee granting or denying a proposed reorganization may appeal to a state appeal board by filing a notice of appeal with the state superintendent within 30 days following the mailing of the order under s. 117.01(2) (c).

" (b) Any person aggrieved by the failure of an agency school committee to make an order granting or denying a proposed reorganization within 90 days after the filing of a petition or the adoption of a resolution by an agency school committee acting on its own motion may appeal to a state appeal board within 30 days following the expiration of said 90 days . . .

" (3) The state superintendent shall set a time and place for the state appeal board to meet. The state appeal board by a majority vote of its members shall make such order as it deems proper under the circumstances to affirm, reverse or modify the order appealed from under sub. (1) (a) or shall make an order granting or denying school district reorganization upon an appeal under sub. (1) (b). The order shall be filed pursuant to s. 117.01(2) (c). Failure of a state appeal board to make an order within 120 days after notice of appeal is filed under sub. (1) shall constitute a denial of the appeal . . .

" (5) Any party to the circuit court appeal may secure a review of the final order of the circuit court by appeal to the supreme court. Such appeal shall be taken as provided by law for appeals from the circuit court in other civil cases, except that the time for appeal shall be limited to 60 days from the notice of entry of the order."

*Summary Judgment.*

The petitioners contend that summary judgment is not authorized in school reorganization cases on appeal to

the circuit court from a state appeal board order. Petitioners cite *Elementary School v. State Appeal Board,* 68 Wis.2d 127, 128, 128(a), 227 N.W.2d 642 (1975) reh. den. 68 Wis.2d 128(a), 231 N.W.2d 193, where this court stated that summary judgment was not authorized in school reorganization cases. On petition for rehearing in *Elementary School* the board claimed that summary judgment in the circuit court had been allowed in many previous reorganization cases.[4] In the per curiam decision on rehearing this court did not modify its earlier statement.

However, the availability of summary judgment in school reorganization cases was not the issue in the *Elementary School* case. The only issue was set forth by the Court:

"The narrow issue before the court is whether an order of the circuit court denying a motion for summary judgment on an appeal to that court in a school district reorganization proceeding is a final order and is appealable. It is not." *Elementary School,* at 68 Wis.2d 128.

The reference to the availability of summary judgment is *dicta* and was disregarded *sub silencio* in the later case of *Joint School District No. 2 v. State,* 71 Wis.2d 276, 237 N.W.2d 739 (1976), where the trial court granted summary judgment in two cases, upholding the board's actions in school reorganization cases. This court said at page 285:

---

[4] In its brief on rehearing the board cited, *Ford v. Rothwell,* 23 Wis.2d 80, 126 N.W.2d 489 (1964); *Burton v. State Appeal Board,* 38 Wis.2d 294, 156 N.W.2d 386 (1968); *In re School District No. 5, Village of Bear Creek v. Kahl,* 42 Wis.2d 263, 166 N.W.2d 160 (1969); *Joint School District No. 1 v. State Appeal Board,* 52 Wis.2d 162, 187 N.W.2d 836 (1971), and *Joint School District v. State Appeal Board,* 56 Wis.2d 790, 203 N.W.2d 1 (1973).

"Summary judgment was appropriate in the instant cases."

The court then cited with approval this court's statement in *Joint School District v. State Appeal Bd.*, 56 Wis.2d 790, 799, 800, 203 N.W.2d 1 (1973):

". . . Sec. 270.635(2), Stats., provides that, when a motion for summary judgment is made by a defendant, judgment may be entered in his favor if there are submitted:

"'. . . such evidentiary facts, including documents or copies thereof, as shall show that his denials or defenses are sufficient to defeat the plaintiff, together with the affidavit of the moving party, either that he believes that there is no defense to the action or that the action has no merit (as the case may be) unless the opposing party shall, by affidavit or other proof, show facts which the court shall deem sufficient to entitle him to a trial.'

"Here the State Appeal Board moved for summary judgment and submitted affidavits together with the minutes of its proceedings establishing that it had acted within its jurisdiction and had not been arbitrary or capricious. These were the only justiciable issues, and the underlying facts were undisputed. The counter-affidavits submitted by the appellants were of an argumentative nature that went only to the substantive wisdom of the board's order. Those facts, even though correct, were irrelevant to the determination of the issues within the province of the circuit court. The determination of jurisdiction and of whether an administrative body acted arbitrarily or capriciously are matters of law which were determinable on the basis of the affidavits by the court without trial. . . ."

Where the affidavits and minutes of its proceedings establish that the State Appeal Board acted within its jurisdiction and was not arbitrary or capricious, summary judgment is available and appropriate. To the extent that the language in *Elementary School* states the contrary, that language is withdrawn. Summary judgment was an appropriate remedy in this case.

*Arbitrary And Capricious.*

On appeals to the courts from school reorganizations, the only issues to consider are whether the board acted within its jurisdiction and whether its order was arbitrary and capricious. *Joint School District v. State* at 56 Wis.2d 797. The state board's decision is arbitrary and capricious when such action is unreasonable or does not have a rational basis. The board's action is also arbitrary when it is the result of an ". . . unconsidered, wilful and irrational choice of conduct and not the result of the 'winnowing and sifting' process." *Joint School Dist. No. 2 v. State* at 71 Wis.2d 284, quoting from *Olson v. Rothwell,* 28 Wis.2d 233, 239, 137 N.W.2d 86 (1965).

The board's action is not a quasi-judicial review but an independent, legislatively delegated re-evaluation of the proposed reorganization. The board is not limited to considering facts within the record and it may also ". . . base its conclusion on matters within its knowledge and expertise in the field of educational policy . . ." *Joint School Dist. No. 2 v. State* at 71 Wis.2d 284 quoting *Joint School District v. State* at 56 Wis.2d 796. "The wisdom of the [board's] decision in terms of policy is not a matter for judicial review." *Joint School District No. 2 v. State,* at 71 Wis.2d 285.

The board is not required to make formalized findings of fact and this court, in the past, has reviewed the board's record to determine if a rational basis exists for the board's decision. *Joint School Dist. No. 2 v. State,* 71 Wis.2d at 284, 285.

The record in this case shows that the board considered lengthy testimony both for and against reorganization. The testimony frequently mentioned at least two rational bases for the board's decision to order reorganization.

First, a K–12 school system would receive higher state school aids. Second, a K–12 system would facilitate coordination of curricular and extra-curricular programs.

The petitioners argue that the board's action did not consider the opposition to reorganization in the Hartland-Arrowhead area. The record reflects that opposition. Previous referenda on reorganization had failed and C.E.S.A. refused reorganization following rejection of the concept by the area's school boards. However, there is no authority for the proposition that a state board's action is arbitrary or capricious because a majority of the people in the district may be against that action.

The petitioners also argue that the board's action was arbitrary and capricious because board members were selected to reflect pre-conceived notions about reorganization. There is no evidence in the record that board members were selected on this basis.

Even if such evidence were in the record, we fail to see its relevance. As this court has stated school reorganization decisions are legislative in nature. One cannot expect that board members come to that position with no convictions or general preferences in controversial areas. But one must assume that the final action taken is based on what a majority of the board feels is best for the educational system involved. There is nothing in the statute that requires that the State Superintendent of Public Instruction appoint members to a board that are without any convictions on controversial educational policies. The State Superintendent is an elected public official who has right to carry on the programs and policies the Superintendent feels promotes desirable educational objectives. It follows that people in policy creating positions such as the board may or may not reflect the Superintendent's view.

### Authority Of Board To Order Referendum.

The petitioners argue that this case must be sent back to the board because the board erred as a matter of law in deciding that it had no authority to order a referendum. Petitioners argue that the board's authority to "modify" an order of C.E.S.A. includes the authority to order a referendum where C.E.S.A. fails or refuses to do so. We hold that the board was correct in concluding that it did not have the authority to order a referendum.

The board's authority to modify a C.E.S.A. order refers to a C.E.S.A. plan of reorganization and not to a C.E.S.A. refusal to grant a referendum. The only provision for a referendum is in sec. 117.02, Stats. and that section applies only to actions taken by C.E.S.A. C.E.S.A. may order such a referendum or a petition by the specified numbers of electors may force the holding of such referendum. C.E.S.A. did not order nor did the required number of electors so petition. Section 117.03, Stats. sets forth the authority of the board and no authority to order a referendum is given. Likewise, there is nothing in the statutes authorizing a petition for a referendum by electors following a decision by the board.

In *Joint School District v. State Appeal Bd.*, 56 Wis.2d 790, 203 N.W.2d 1 (1973), petitioners in the Wabeno School District sought to have a portion of that district attached to the White Lake School District. C.E.S.A. issued an order denying the proposed reorganization and the petitioners appealed to the state board. The board reversed C.E.S.A. and ordered reorganization. Mr. Volk and others, who were not among the original petitioners before C.E.S.A. appealed to the circuit court and that court affirmed the board's order. On appeal to this court Volk claimed that he had been denied equal protection because the petitioners before C.E.S.A. could have asked for a referendum and he could not do the same following the board's order. This court rejected

Volk's argument as frivolous because any party aggrieved by the C.E.S.A. action was entitled to a referendum. This court then said:

"Any party 'aggrieved' has precisely the same rights. The same situation applies when the reorganization is consummated by an order of the State Appeal Board. The parties are treated alike and neither has a right to a referendum, but the aggrieved party has a right to review by the courts." *Joint School District* at 56 Wis.2d 799.

The petitioners rely on statutory construction to support their argument that a referendum may still be held after a state board hearing. Sec. 117.03(3), Stats. (1975), *supra* provides that the board may ". . . affirm, reverse or modify the order appealed from . . ." and that the board's order shall be filed pursuant to sec. 117.01(2)(c), Stats. (1975). Sec. 117.01(2)(c) provides that a certified copy of any school reorganization order,

". . . shall be filed within 10 days after it is made with the secretary of the agency school committee in which the proposed reorganized school district lies. Upon receipt of the order, the secretary of the agency school committee immediately shall place thereon the date upon which it was received and, within 5 days after receipt thereof, shall send by certified mail a certified copy of the order together with a certification of the date of mailing of the copy to the clerk of each school district, town, village, city and county affected and to the state superintendent. . . ."

Under sec. 117.01(2)(d),

"The appeal and referendum period shall run from the date the certified copies of the order are mailed by the secretary."

Finally, sec. 117.02(4)(a) provides in pertinent part that,

"If within thirty days after the date of mailing of an order of *school district reorganization issued under this section,* a petition requesting a referendum on the order

and signed by a sufficient number of the electors of the territory included in the proposed reorganized school district is filed . . . (c) the order shall not become effective until it has been approved at the referendum . . ." (Emphasis added.)

From these statutes the petitioners argue that the state board must file its order of school reorganization with the agency school committee pursuant to sec. 117.01 (2) (c). When the order is mailed to the various school district and municipal clerks this act triggers the beginning of the thirty day period, mentioned in sec. 117.02(4) (a), during which electors in the territory can petition for referendum.

The board points out the weakness in this statutory interpretation. Sec. 117.02 (4) (a) refers to a reorganization order "issued under this section," the section involved is sec. 117.02 and not sec. 117.03. Because the state board operates under sec. 117.03 and not sec. 117.02 the referendum provisions of sec. 117.02 (4) (a) do not apply to the board's actions.

We do not discuss the petitioners' arguments concerning the legislative history of Ch. 117 because the statute is not ambiguous.

### Other Issues.

The petitioners contend that they were entitled to discovery in the circuit court concerning factual material not in the record of the proceedings before the appeal board. As has already been stated, the whole circuit court review procedure is summary in nature. The circuit court review is not a trial *de novo,* or a trial of fact issues; it is only a review of the proceedings before an administrative agency. *Elementary School* at 68 Wis.2d 128, 128(a). *Perkins v. Peacock,* 263 Wis. 644,

652, 58 N.W.2d 536 (1953). The discovery that the petitioners' request can only serve as preparation for or a substitute for a trial *de novo* or a fact gathering process that the circuit court is not authorized to conduct in reviewing a state appeal board order.

The petitioners contend that there may be a qualified *de novo* investigation in the circuit court to determine whether the board acted arbitrarily or capriciously. *Joint School Dist. v. Waupaca, etc. v. County S. Comm.*, 271 Wis. 100, 72 N.W.2d 909 (1955). However, as pointed out above, there is already more than adequate evidence in the record to provide a rational basis for the board's action. *Olson v. Rothwell*, 28 Wis.2d 233, 239, 137 N.W.2d 86 (1965).

The petitioners also contend that discovery is needed to determine whether the board underestimated the limits of its discretion to remand the case to C.E.S.A. The record is clear that the board thought it could not remand to C.E.S.A. for a referendum and we agree.

The petitioners also argue that the board erred in failing to remand to C.E.S.A. for a referendum because that was the only relief requested of the board. The petitioners rely on *Estate of Dohn*, 188 Wis. 626, 631, 632, 206 N.W. 877 (1926) and sec. 251.09, Stats. (1975), concerning discretionary reversals, for the proposition that this court will not give relief that is not properly petitioned for, except in extreme cases to prevent a miscarriage of justice. The petitioners analogy between an appellate court and the board is erroneous.

". . . proceedings before the State Appeal Board are not a mere review of the record before the agency school committee of CESA. It is not an appeal as that term is understood in the judicial sense. It is a new proceeding of a legislative nature. The State Appeal Board is

not bound by the record of the agency school committee; it is not obliged to rely upon its findings or upon the evidence before it and can make its own legislative determination on the basis of its own hearing and upon such other information as it might consider relevant to its decision." *Joint School Dist. v. State,* at 56 Wis.2d 796, 797.

The petitioners also argue that the portion of the boards' reorganization order, concerning electoral districts for the new K–12 school district, contravenes the fourteenth amendment's one person, one vote principle.

The one person, one vote principle applies to local elections. *Avery v. Midland College,* 390 U.S. 474, 478, 479, 88 S. Ct. 1114, 20 L. Ed.2d 45 (1968). In *Avery* at 390 U.S. 485, 486, the court stated that,

". . . units with general governmental powers over an entire geographic area [may] not be apportioned among single member districts of substantially unequal population."

The one person, one vote principle also applies to school boards as well as other municipal elections. *Hadley v. Junior College District,* 397 U.S. 50, 52, 90 S. Ct. 791, 25 L. Ed.2d 45 (1970).

However, in *Dusch v. Davis,* 387 U.S. 112, 87 S. Ct. 1554, 18 L. Ed.2d 656 (1967), the U.S. Supreme Court upheld a municipal apportionment plan where seven borough city council members and four at-large members were all elected by a vote of all the electors in the city. The population in the individual boroughs varied widely, but the court did not find that factor objectionable because the borough was the basis for residency and not for representation. Each council member was in reality ". . . the city's, not the borough's." *Dusch* at 387 U.S. 115.

In this case the petitioners argue that the board's plan of electing one school board member from each of the

nine former elementary school districts impermissibly dilutes the voting strength of the residents of more populous districts. This argument fails for two reasons. First, the record does not show that any of the elementary school districts are more populous than others, so no disproportionate voting strength has even been demonstrated. Second, under the rule of *Dusch, supra,* unequal voting districts are permissible so long as the districts are the basis of residency and not voter representation. Sec. 120.06 (2), Stats. (1975) provides that school board members are elected in at large elections so here the elementary school districts are the basis of residency and not representation. Each member of the board represents the whole unified district.

*By the Court.*—Judgment and order affirmed.