STATE EX REL. Christine J. DIECKHOFF, Dale
R. Gough, Wayne Dieckhoff, Elvina H.
Dieckhoff, Fred H. Thurow, Jr., Betty Thurow,
Clarence Leaver, Jr., Marion Leaver, Ralph
Nafzger, Sharon Nafzger, Rose Binger, et al.,
Plaintiffs-Appellants,

v.

Robert E. SEVERSON, Green County Clerk,
Defendant-Respondent,

Linda AHRENS, Sam Kaderly and the Juda
School Board, Intervenors-Respondents.†

Court of Appeals

*No. 86–2231. Submitted on briefs March 2, 1988.—Decided
May 12, 1988.*

(Also reported in 426 N.W.2d 71.)

† Petition to review denied.

184

For the plaintiffs-appellants the cause was submitted on the briefs of *Joseph F. Owens, Christopher J. Brown* and *Gordon B. Baldwin,* and *Murphy & Desmond,* S.C., of Madison.

For the intervenors-respondents the cause was submitted on the brief of *Michael B. Van Sicklen* and *Foley & Lardner,* of Madison.

Before Gartzke, P.J., Dykman and Sundby JJ.

DYKMAN, J.   Christine J. Dieckhoff and others appeal from a judgment requiring Robert E. Severson, Green County Clerk, to hold a referendum election in the Juda and Brodhead school districts on the School District Boundary Appeal Board order of June 23, 1986, pursuant to sec. 117.035(3), Stats.[1] The case involves Dieckhoff's sec. 117.08(1)(a)[2] petition for the

---

[1]Section 117.035(3), Stats., provides:

Any order issued by the board under s. 117.03 which constitutes, affirms or modifies an order of school district reorganization is subject to approval at a referendum if a petition for a referendum has been or is subsequently filed as provided under subs. (1) and (2) in the case of school board orders, or if a referendum is directed by the board. The referendum shall be conducted as provided under subs. (1) and (2).

[2]Section 117.08(1)(a), Stats., provides:

The owner of an individual parcel of property or 10% of the electors residing in territory proposed to be detached from one school district and attached to an adjoining school district may file a written petition with the clerks of the school boards of the

detachment of real estate from the Juda school district. The joint school boards denied Dieckhoff's petition, the Appeal Board granted it, and persons aggrieved by the Board's order petitioned for a referendum. The respondents, who are parties aggrieved by the Board's order, intervened in the trial court. The issues are: (1) whether sec. 117.035(3) authorizes a referendum to review the Board's order in this case; (2) whether the referendum petition contained a sufficient number of authorized signatures; (3) whether the referendum is barred by the statute of limitations; and (4) whether the appellants have vested rights under the Board's order which may not be altered.

We conclude that sec. 117.035(3), Stats., authorizes a referendum to review the Board's order, that the petition for referendum contained a sufficient number of signatures, and that the referendum is not barred by the statute of limitations. Because of our decision on these issues, we need not decide whether the appellants have vested rights under the Board's order. Therefore we affirm the trial court.

## FACTS

In early 1986, Dieckhoff and other persons residing in the Juda school district filed a sec. 117.08(1)(a),

affected school districts requesting that the parcel or territory be detached from its present school district and attached to an adjoining school district. The petition shall include a description of the parcel or territory sufficiently accurate to determine its location and the school district in which it is located, as certified by the clerk of each city, town or village within which all or part of the parcel or territory is located. Upon receipt of the petition, each school board shall send a copy of the petition to the state superintendent.

Stats., petition with the clerks of the school boards of the Juda and Brodhead school districts. Dieckhoff sought to have a part of the Juda school district attached to the Brodhead school district.

Pursuant to sec. 117.08(1)(b), Stats.,[3] the joint school boards held a public hearing on Dieckhoff's petition. Because both boards did not approve the petition, the school boards issued an "order for denial," which was filed with the Appeal Board pursuant to sec. 117.01(2)(c).[4]

Dieckhoff appealed to the Appeal board. The Board met pursuant to sec. 117.03(3)(a), Stats.,[5] re-

[3]Section 117.08(1)(b), Stats., provides:

Within 45 days of receipt of the petition under par. (a), the school boards shall hold a joint public hearing at a time and place designated by the school board of the school district from which the parcel or territory is proposed to be detached. Notice of the proposed transfer and of the hearing, with a description of the parcel or territory proposed to be transferred, shall be published at least 10 days prior to the hearing by the clerk of each school district as a class 1 notice, under ch. 985, in the school districts affected by the proposed transfer. The school board of the school district from which the property is proposed to be detached shall designate a chairman for the hearing and provide for a stenographic record or an electronic recording of the hearing.

[4]Section 117.01(2)(c), Stats., provides:

A certified copy of any order reorganizing a school district or denying such reorganization shall be filed within 10 days after it is made with the secretary of the board. Upon receipt of the order, the secretary of the board immediately shall place thereon the date upon which it was received and, within 5 days after receipt thereof, shall send by certified mail a certified copy of the order together with a certification of the date of mailing of the copy to the clerk of each school district, town, village, city and county affected and to the state superintendent.

[5]Section 117.03(3)(a), Stats., provides in part:

187

versed the school boards' order, and issued an order for school district reorganization pursuant to Dieckhoff's petition.

A petition for a referendum on the Appeal Board's order was subsequently filed with the clerk of Green county pursuant to sec. 117.035(1)(c), Stats.[6] More than ten percent of the electors in the Juda school district had signed the petition. The county clerk set the referendum for the date of a general election.

Dieckhoff filed a complaint in circuit court, seeking to enjoin the referendum because the petition for referendum was not signed by a sufficient number of electors. The trial court issued an injunction prohibiting the referendum because secs. 117.035(1)(a) and (3), Stats., did not permit a referendum on an Appeal Board order in this case. The trial court held that the sole remedy to review the Appeal Board's order was an appeal to the circuit court under sec. 117.03(4),[7] and

The state superintendent shall set a time and place for the board to meet. The board by a majority vote of its members shall make such order as it deems proper under the circumstances to affirm, reverse or modify the order appealed from under sub. (1)(a) or shall make an order granting or denying school district reorganization upon an appeal under sub.(1)(b). The order shall ... be filed under s. 117.01(2)(c).

[6]Section 117.035(1)(c), Stats., provides in part:

The petition or resolution shall be filed with the county clerk of the county having the largest equalized valuation in the proposed reorganized school district.

[7]Section 117.03(4), Stats., provides in part:

Any person aggrieved by an order of the board which provides school district reorganization may appeal therefrom to a circuit court of any county in which any territory of the proposed reorganized school district lies.

because the county did not pursue this relief, the Appeal Board was final. The trial court also denied a motion to intervene brought by Sam Kaderly and the Juda School Board.

The intervenors, Linda Ahrens, Sam Kaderly and the Juda School Board, moved for relief from the order denying intervention or, alternatively, for permission to intervene post-decision, and for relief from the order enjoining the referendum. After a hearing, the trial court granted the intervenors' motion to intervene post-decision because their rights were no longer adequately represented. This was because the Green county clerk stipulated that he would not appeal the trial court's earlier decision.

After a hearing on the intervenors' motion for reconsideration, the trial court rescinded its earlier injunction and ordered the Green county clerk to hold the referendum on the Appeal Board's order. The trial court concluded that because the Appeal Board's order constituted an order of school district reorganization, a referendum on the order was allowed under sec. 117.035(3), Stats. We issued an order granting Dieckhoff's motion for relief pending appeal.

## STANDARD OF REVIEW

■■■■■
Questions of statutory interpretation are questions of law which we review *de novo. In Interest of J.V.R.,* 127 Wis. 2d 192, 199, 378 N.W.2d 266, 269 (1985). Our purpose in construing a statute is to ascertain the legislature's intent and give it effect. *Watts v. Watts,* 137 Wis. 2d 506, 517, 405 N.W.2d 303, 308 (1987). Our primary source in construing a statute is that statute's language, and, absent ambiguity, our

duty is to give that language its ordinary meaning. *State v. McKenzie,* 139 Wis. 2d 171, 176, 407 N.W.2d 274, 276 (Ct. App. 1987). The "entire section of a statute and related sections are to be considered" in construing or interpreting the words of a statute. *Id.* at 177, 407 N.W.2d at 277. The threshold question in reviewing a statute is whether the statutory language is ambiguous, that is, if "reasonable persons could disagree as to its meaning." *Standard Theatres v. Transportation Dept.,* 118 Wis. 2d 730, 740, 349 N.W.2d 661, 667 (1984). If a statute is unclear, we will "endeavor to discover the legislature's intent as disclosed by the scope, history, context, subject matter and purpose of the statute." *Watts,* 137 Wis. 2d at 517, 405 N.W.2d at 308.

## *RIGHT TO A REFERENDUM*

As of 1978, there was no right to a referendum on a State Appeal Board (now School District Boundary Appeal Board) order. "[T]here is nothing in the statutes authorizing a petition for a referendum by electors following a decision by the [State Appeal Board]." *Joint Sch. Dist. No. 2 v. State Appeal Board,* 83 Wis. 2d 711, 722, 266 N.W.2d 374, 379 (1978). "[N]either [party] has a right to a referendum [on a State Appeal Board order], but the aggrieved party has a right to review by the courts." *Joint School District v. State Appeal Bd.,* 56 Wis. 2d 790, 799, 203 N.W.2d 1, 6 (1973).

The supreme court addressed the right to a referendum in *Joint Sch. Dist. No. 2,* 83 Wis. 2d at 723–24, 266 N.W.2d at 380. There, the petitioners

argued that sec. 117.02(4)(a), Stats. (1975),[8] allowed a referendum after a state board hearing. The supreme court disagreed. Because the state board operated under sec. 117.03 and not sec. 117.02, the referendum provisions of sec. 117.02(4)(a) did not apply to the board's actions. *Joint Sch. Dist. No. 2*, 83 Wis. 2d at 724, 266 N.W.2d at 380. However, the legislature made significant changes in these sections after 1979. Therefore, the supreme court's conclusion that there was no right to a referendum on a State Appeal Board order may no longer be applicable.

Section 117.035(3), Stats., was created by sec. 4, ch. 303, Laws of 1979, and provided as follows:

> (3)   Any order issued by a state appeal board under s. 117.03 which constitutes, affirms or modifies an order of school district reorganization, is subject to approval at a referendum if a petition for a referendum is filed as provided under sub. (1) in the case of agency school committee orders, or if a referendum is directed by the motion of the state appeal board, or if, within 30 days after the date of mailing of the order under s. 117.01(2)(c), a referendum is demanded by adoption of a resolution by the common council of any city affected by the order. The referendum shall be conducted as provided under sub. (1).

---

[8]Section 117.02(4)(a), Stats. (1975), provides in pertinent part:

If within 30 days after the date of mailing of an order of *school district reorganization issued under this section,* a petition requesting a referendum on the order and signed by a sufficient number of the electors of the territory included in the proposed reorganized school district is filed ... the order shall not become effective until it has been approved at the referendum .... (Emphasis added.)

In 1984, this section was modified when the agency school committee was replaced by the school boards of the affected school districts. Section 1460d, 1983 Wis. Act 27. Also, the State Appeal Board was renamed the School District Boundary Appeal Board. Section 1447, 1983 Wis. Act 27. In 1986, this section was further modified to its present form. Section 54m, 1985 Wis. Act 225, removed the language allowing the common council of an affected city to demand a referendum. The section now reads as follows:

> (3) Any order issued by the board under s. 117.03 which constitutes, affirms or modifies an order of school district reorganization is subject to approval at a referendum if a petition for a referendum has been or is subsequently filed as provided under subs. (1) and (2) in the case of school board orders, or if a referendum is directed by the board. The referendum shall be conducted as provided under subs. (1) and (2).

It is undisputed that the Appeal Board issued an order of school district reorganization. We conclude that if the school boards' "order for denial" is a "school board order" within the meaning of sec. 117.035(3), Stats., then there is a right to a referendum of the Appeal Board order.

## WHAT IS A "SCHOOL BOARD ORDER"?

Dieckhoff argues that the term "school board orders" encompasses only those school board orders requiring school district reorganization, and does not include an order denying reorganization. Dieckhoff contends that without an original school board order requiring school district reorganization, sec. 117.035(3), Stats., provides no right to petition for a

referendum on a subsequent Appeal Board order requiring school district reorganization. Therefore, Dieckhoff concludes that an aggrieved party's sole recourse is to seek judicial review of the Appeal Board order under sec. 117.03(4). Because that relief was not sought in this case, the Appeal Board order would be final.

We will not construe statutes to reach an unreasonable result. *State v. Yellow Freight System, Inc.,* 101 Wis. 2d 142, 153, 303 N.W.2d 834, 839 (1981). We must consider directly linked statutes *in pari materia* and harmonize them if possible. *State v. ILHR Department,* 101 Wis. 2d 396, 403, 304 N.W.2d 758, 762 (1981). We construe statutes in light of related statutes. *Mazurek v. Miller,* 100 Wis. 2d 426, 431, 303 N.W.2d 122, 125 (Ct. App.), *cert. denied,* 454 U.S. 896 (1981). We conclude that Dieckhoff's narrow interpretation of "school board order" as used in sec. 117.035(3), Stats., is not supported by an examination of related sections.

### a. *Section 117.01(2)(c), Stats.*

Section 117.01(2)(c), Stats., provides that a "certified copy of any order reorganizing a school district or denying such reorganization shall be filed within 10 days after it is made with the secretary of the [Appeal Board]." This section implies that an "order ... denying such reorganization" is a "school board order."

### b. *Section 117.08(3), Stats.*

Section 117.08(3), Stats., deals with those instances where the assessed value of the parcel in

question, multiplied by its assessment ratio, is less than five percent of the equalized valuation of the school district from which the parcel is proposed to be detached. It provides that a "person aggrieved by an order or failure to make an order" may seek review by a qualified mediator appointed by the state superintendent. The mediator reviews the case and makes findings of fact and recommendations to the affected school boards. Within thirty days of receipt of the mediator's report, the school boards shall adopt a resolution "affirming, modifying or reversing the resolution adopted under sub.(1)(c). This resolution shall constitute an order of school district reorganization ...."

This statute contemplates that an order denying reorganization may be affirmed by the school boards, and that such action would become a "resolution" constituting "an order of school district reorganization." An original school board order requiring school district reorganization may be subsequently reversed by the school boards. Therefore, a resolution denying a petition for reorganization can constitute an "order of school district reorganization."

c. *Section 117.08(2), Stats.*

If the assessed value of the parcel in question, multiplied by its assessment ratio, is equal to or greater than five percent of the equalized valuation of the school district from which the parcel is proposed to be detached, "an order of school district reorganization under sub.(1)(c) is appealable under s. 117.03."

Under Dieckhoff's analysis, an order denying reorganization under this section would not have the

same status as an order denying reorganization under sec. 117.08(3), Stats., which provides for the possibility that an order for denial can be affirmed by resolution by the school boards, or that an original order requiring school district reorganization can be reversed by the school boards' resolution, and that such resolutions will constitute "order[s] of school district reorganization." We see no reason for this difference in treatment, and we conclude that the legislature did not contemplate such an inconsistent treatment of school board orders.

### d. *Section 117.03(1), Stats.*[9]

This section provides that any aggrieved party may appeal the actions taken by the school boards. An appeal is allowed whether the school boards issued an order requiring reorganization, issued an order denying reorganization, or failed to act at all. Dieckhoff's argument that the "order for denial" filed in this case was not an order within the meaning of sec. 117.08(1)(c), Stats., but a "failure to make an order" which must be treated differently from an order, is unpersuasive.

Section 117.03(1), Stats., requires that an aggrieved party follow different procedures for the

---

[9] Section 117.03(1), Stats., provides:

(a) Any person aggrieved by an order under s. 117.08(2) or (3)(b) may appeal to the board by filing a notice of appeal with the state superintendent within 30 days following the mailing of the order under s. 117.01(2)(c).

(b) Any person aggrieved by the failure to make an order under s. 117.08(2) or (3)(b) within 60 days after the filing of a petition or resolution may appeal to the board within 30 days following the expiration of said 60 days.

(c) No appeal to the board may be withdrawn.

school boards' "order" than for the school boards' "failure to make an order." We conclude that the phrase "failure to make an order," as used in sec. 117.03(1)(b), has the same meaning as "failure to act on the [sec. 117.08(1)(a)] petition within 45 days after its filing [with the clerks of the affected school boards]" as used in sec 117.08(1)(c). Therefore, when the school boards fail to hold a public hearing on a sec. 117.08(1)(a) petition within forty-five days of its filing, this constitutes both a "failure to act" and a "failure to make an order." When this takes place, an aggrieved party may appeal pursuant to sec. 117.03(1)(b). Where the school boards hold a hearing pursuant to sec. 117.08(1)(b) on a sec. 117.08(1)(a) petition, and the school boards issue an order granting or denying reorganization and such order is filed within ten days with the Appeal Board secretary pursuant to sec. 117.01(2)(c), then an aggrieved party's appeal is governed by the procedure in sec. 117.03(1)(a).

e. *Section 117.03(3)(a), Stats.*

■

The language of sec. 117.03(3)(a), Stats., further demonstrates the inconsistency of Dieckhoff's argument. This section provides that the Appeal Board shall "affirm, reverse or modify" an "order" appealed from under sub.(1)(a), or the Appeal Board "shall make an order granting or denying school district reorganization upon an appeal under sub.(1)(b)." Section 117.03(1)(b) deals with a "failure to make an order under s. 117.08(2) or (3)(b)." In this case, the Appeal Board's order was as follows: "THEREFORE, IT IS ORDERED that said School Board order be reversed ...." The Appeal Board therefore treated Dieckhoff's

appeal as an appeal under sec. 117.03(1)(a). The Appeal Board treated the "order for denial" not as a "failure to make an order," but as an "order."

After examining the use of "order of school reorganization," "school board orders," "order," "denial of the petition," "failure to make an order," "order reorganizing a school district," and "order ... denying such reorganization," we conclude that the meaning of these words and phrases is sometimes unclear. Therefore we are required to interpret these terms in the manner which will result in the most logical, cohesive and consistent reading of ch. 117 possible. *See State v. ILHR Department,* 101 Wis. 2d at 403, 304 N.W.2d at 762 (we must harmonize statutes where possible).

We conclude that construing the phrase "school board order" to include the school boards' "order for denial" harmonizes the meaning of the term "order" throughout ch. 117. Therefore, where there is a previous "school board order," the language of sec. 117.035(3), Stats., allows a party aggrieved by a subsequent Appeal Board order requiring school district reorganization to petition for a referendum on that order. The question is not before us, and therefore we do not decide, whether there would be a right to a referendum had the school boards failed to issue any order at all.

### SUFFICIENCY OF PETITION FOR REFERENDUM

Section 117.035(1)(a), Stats., provides in pertinent part:

> If ... a petition requesting a referendum on the order and signed by a sufficient number of the electors of the territory included in the proposed reorganized school district is filed ... the order shall not become effective until it has been approved at the referendum by each affected school district by a majority vote of the electors within that school district. In this paragraph, a "sufficient number of electors" means at least 500 of the electors who reside in the proposed reorganized school district, or at least 10% of the electors who reside in either of the school districts affected by the order. ...

Dieckhoff argues that in order to give full meaning to this section, we must give effect to two clauses: a territorial clause and a numerical clause. The "territorial clause" is: "... a petition requesting a referendum on the order and signed by a sufficient number of the electors of the territory included in the proposed reorganized school district ...." The "numerical clause" is: "... a 'sufficient number of electors' means at least 500 of the electors who reside in the proposed reorganized school district, or at least 10% of the electors who reside in either of the school districts affected by the order."

Section 115.001(6)(a), Stats., defines "proposed reorganized school district" as "only the territory in the school district to which the territory is ... proposed to be attached and the territory attached thereto by such ... proposed order." Section 115.001(6)(d) specifically excludes from this definition "the territory remaining in any school district from which territory is detached ...." Section 115.001(9) defines "school district affected" to include the school district from which territory is detached.

198

Dieckhoff argues that since a sufficient number of electors from the "proposed reorganized school district" did not sign the referendum petition, the "territorial" requirement was not met, and the petition is invalid.

We reject Dieckhoff's analysis. Section 117.035(1)(a), Stats., has only one requirement for a petition for referendum to be valid: it must be signed by a "sufficient number of electors." The phrase is defined within the section, and provides two alternative ways to meet the signing requirement. The requirement is met by either obtaining the signatures of "at least 500 of the electors who reside in the proposed reorganized school district, or at least 10% of the electors who reside in either of the school districts affected by the order."

It is undisputed that there was a petition for referendum signed by at least ten percent of the electors of a "school district affected," the Juda school district. The petition thus fulfilled the alternative requirement, and is therefore valid. We conclude that these statutes unambiguously provide that the petition for referendum filed with the Green county clerk was sufficient to require a referendum on the Appeal Board order of school district reorganization.[10]

---

[10]Dieckhoff raises the issue of whether a petition for referendum signed by at least 10% of the electors residing in the parcel sought to be detached is valid. A petition is valid only: if signed by 500 electors in a proposed reorganized school district, or if signed by at least 10% of the electors in either of the school districts affected. Section 117.035(1)(a), Stats. The parcel sought to be detached is neither a "proposed reorganized school district" within the meaning of sec. 115.001(6), Stats., nor a "school district

## STATUTE OF LIMITATIONS

Dieckhoff contends that the respondent's action is barred by the action of sec. 893.74, Stats., and sec. 117.01(7), Stats.

Section 893.74, Stats., provides:

No appeal or other action attacking the legality of the formation of a school district, either directly or indirectly, may be commenced after the school district has exercised the rights and privileges of a school district for a period of 90 days.

Section 117.01(7), Stats., provides:

No appeal or other action attacking the legality of the formation of a school district, either directly or indirectly, may be taken after the period provided by s. 893.74. This subsection shall be liberally construed to effect the legislative purpose to validate and make certain the legal existence of all school districts in this state, however created or reorganized, and to bar every right to question the existence thereof in any manner and to bar every remedy therefor notwithstanding any defects or irregularities, jurisdictional or otherwise, after the expiration of the period

affected" within the meaning of sec. 115.001(9). The only "proposed reorganized school district" in this case is Brodhead's. Juda is not a "proposed reorganized school district." The "school districts affected" are those of Juda and Brodhead. The petition in this case was signed by only 5 or 6 electors within the "proposed reorganized school district," and not "at least 500." Therefore, the petition fails the first alternative test. The petition was not signed by at least 10% of the electors from the Brodhead school district, one of the "school districts affected." However, the petition was signed by at least ten percent of the electors from the other "school district affected," the Juda school district, and is thereby valid.

provided by s. 893.74 except where some action or proceeding has been commenced within that period.

Dieckhoff argues that there has been a *de facto* reorganization. Dieckhoff points out that since August 1986, the Reorganized Brodhead School District has exercised the rights and privileges of a school district pursuant to a valid Appeal Board reorganization order, and that taxes have been levied based on the reorganization. Dieckhoff also argues that the intervenors never filed for judicial review of the Appeal Board order and they never sought to enjoin the Department of Public Instruction from issuing aids and credits based on reorganization. Dieckhoff argues that, even if a referendum is held and a majority of the Juda school district electors vote to disapprove the Appeal Board order, any subsequent action brought to disband the reorganized school district will be barred by sec. 893.74, Stats., the applicable statute of limitations. This is because no one has commenced an action attacking the operation of the reorganized school district. Therefore, because ninety days have passed since the reorganized school district has "exercised the rights and privileges of a school district," Dieckhoff contends that the statute of limitations has run on the intervenors.

We disagree with Dieckhoff's analysis. The Appeal Board is a "reorganization authority." Section 115.001(4), Stats. On June 23, 1986, the Appeal Board issued a sec. 117.01(2), Stats., "reorganization order" pursuant to sec. 117.03(3). The Appeal Board order was subject to approval at a referendum pursuant to sec. 117.035(3), since a timely referendum petition was filed.

201

Section 117.035(3), Stats., provides in pertinent part: "Any [Appeal Board] order issued ... under s. 117.03 which constitutes ... an order of school district reorganization is subject to approval at a referendum if a petition for referendum ... is subsequently filed. ... The referendum shall be conducted as provided under subs. (1) and (2)."

Section 117.035(1)(a), Stats., provides in pertinent part: "the order *shall not become effective* until it has been approved at the referendum by each affected school district by a majority vote of the electors within that school district." (Emphasis added.)

Section 117.01(1)(d), Stats., provides in pertinent part: "While a reorganization proceeding is pending ... any other reorganization proceeding commenced or order made ... is void. A reorganization proceeding is pending: 1. Until an order of school district reorganization made in the reorganization proceeding takes effect."

We have decided that there was a right to petition for a referendum on the Appeal Board order and that there was a valid petition signed by the requisite number of electors. We conclude that the Appeal Board order has not yet taken effect because it has not yet been approved by referendum. Therefore, the statute of limitations has not yet begun to run.

We reject Dieckhoff's argument that there has been a *de facto* reorganization because until the Appeal Board order takes effect or is disapproved, "any other reorganization proceeding" is void. Section 117.01(1)(d), Stats. Unilateral actions on the part of the appellants, the Department of Revenue, the Department of Public Instruction and the Brodhead

School District's Superintendent cannot divest parties aggrieved by the Appeal Board order of their right to petition for and obtain a referendum on the Appeal Board order.

Because we dispose of the case on these grounds, we need not reach the other issues raised by the parties.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (concurring). I concur in the result. However, I write separately to suggest the desirability of a clarifying amendment to sec. 117.035(1)(a), Stats. Contrary to the majority, I do not find this provision, which establishes the signing requirements for a petition for a referendum on a school district reorganization order, to be umambiguous.

The first requirement of the statute is that the petition be signed by a sufficient number of the electors "of the territory included in the proposed reorganized school district." Sec. 117.035(1)(a), Stats. The majority acknowledges that, under sec. 115.001(6)(a), Stats., the proposed reorganized school district is Brodhead and the territory proposed to be attached thereto. Juda is excluded from the definition. Therefore, under the literal language of the statute, to be eligible to sign a referendum petition, an elector must reside within the Brodhead district or the territory proposed to be attached thereto.

The majority skips to the definition of "sufficient number of electors" and concludes that that definition overrides the requirement of residency within the proposed district, thus permitting Juda electors who do not reside within the proposed district to sign the referendum petition.

Prior to 1983 it was legislative policy that only electors residing within the proposed reorganized school district could petition for and vote on a reorganization order. Sec. 117.035(1)(a), Stats. (1981–82). At that time "a sufficient number of electors" was defined as "500 of the electors who reside in the proposed reorganized school district, or 10% of such electors who reside in cities and villages or 10% of such electors who reside in towns." *Id.*

At that time, of course, the definition of "electors" in the first sentence of sec. 117.035(1)(a), Stats., was consistent with the legislative requirement that a petitioning elector was required to reside in the territory included in the proposed reorganized school district. This method of voting on reorganization orders set up an undesirable tension between urban and rural residents of a proposed reorganized school district which undoubtedly led to the amendment of the referendum procedure by the 1983 legislature.

In 1983 the emphasis shifted to the school districts affected by a reorganization order. The definition of "electors" was therefore amended to read: "A sufficient number of petitioners is 500 of the electors who reside in the proposed reorganized school district, or 10% of the electors who reside in either of the school districts affected by the order." 1983 Wis. Act 479. The legislature did not, however, amend the first sentence of sec. 117.035(1)(a), Stats., to eliminate the requirement that only electors of the territory included in the proposed reorganized school district were eligible to petition for a referendum. The failure of the legislature to delete this requirement from sec. 117.035(1)(a) may be regarded as a "'legislatively dropped stitch in the statute.'" *NCR Corp. v. Revenue Dept.,* 128 Wis. 2d 442, 457 n. 7, 384 N.W.2d 355, 363

(Ct. App. 1986), quoting *Scharping v. Johnson,* 32 Wis. 2d 383, 393–94 n. 6, 145 N.W.2d 691, 697 (1966). I would recognize it as such.