915 F.2d 1145
 63 Ed. Law Rep. 81
 Wayne DIECKHOFF; Christine J. Dieckhoff; Ellen J.
Dieckhoff, a minor; Dale Gough; Arlene Gough; Matthew R.
Gough, a minor; Kevin R. Gough, a minor; Terry Gough;
Sherry Gough; Jason J. Gough, a minor; Julie L. Gough, a
minor; Keith E. Kamholz; Eugene H. Kamholz; Janis E.
Kamholz; Fred Nafzger; Susan Nafzger; Shannon K. Nafzger,
a minor; Ralph Nafzger; Sharon Nafzger; Amy L. Nafzger, a
minor; Curtis J. Newcomer; Sharon Newcomer; Shaun C.
Newcomer, a minor; Merlyn Nenneman; Carol Nenneman;
Merrit J. Nenneman, a minor; Melvin P. Nenneman, a minor;
Mildred A.R. Nenneman, a minor; Kenneth Slack; Nancy
Coplien; Rolland Coplien; Bernadette Kammes; Clarence
Leaver; Marion Leaver; Lorraine Williams; Timothy J.
Balsiger; Laura A. Balsiger; Tad M. Balsiger, a minor;
Cindy Chesna; Tiffany L. Boyce, a minor; Larry Kloepping;
Joan Kloepping; and Todd Slack, Plaintiffs-Appellants,
v.
Robert E. SEVERSON, County Clerk in and for Green County,
Wisconsin; Herbert J. Grover, Secretary, Wisconsin
Department of Public Instruction; and Donald D. Schneider,
Secretary, Wisconsin School District Boundary Appeal Board,
Defendants-Appellees.
School District of Juda, Henry E. Henning, Susan E. Henning,
and Samuel Kaderly, Intervenors-Appellees.
 No. 89-1278.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 24, 1990.
Decided Oct. 15, 1990.
 
 Joseph Owens, John M. Carroll, Jr., Pangman & Associates, Waukesha, Wis., for plaintiffs-appellants.
 Bradley D. Armstrong, Steven M. Streck, Axley & Brynelson, Madison, Wis., for defendant-appellee Robert E. Severson.
 Warren D. Weinstein, Asst. Atty. Gen., Office of Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for defendants-appellees Herbert J. Grover and Donald D. Schneider.
 Michael V. Sicklen, Madison, Wis., Scott Thompson, Monroe, Wis., for intervenors-appellees.
 Before BAUER, Chief Judge, and RIPPLE and KANNE, Circuit Judges.
 BAUER, Chief Judge.
 
 
 1
 This case is a tale of two school districts. Plaintiffs-appellants, a group of minor children, their parents and other landowners ("Parents"), attempted to jump from one school district to another. At first, it appeared to be the best of times for Parents: they were granted administrative approval of their scheme to "detach" their land from one school district and "attach" it to the other. In the end, it was the worst of times: a referendum was called for and held, through which the jilted community resoundingly rejected Parents' detachment/attachment scheme. Parents then filed suit in federal court, claiming that irregularities in the conduct of the referendum deprived them of various constitutionally-protected rights, most particularly the fundamental right to vote. Finding that the parents failed to meet the standard for such claims that we established in Bodine v. Elkhart County Election Board, 788 F.2d 1270 (7th Cir.1986), the district court granted summary judgment against Parents. For the reasons outlined below, we affirm.
 
 
 2
 * Parents live in Green County, Wisconsin, in a portion of the Juda School District near the border of the Brodhead School District. In early 1986, Parents decided that they wanted to "detach" their property from Juda and "attach" it to Brodhead.[1] Parents first petitioned the joint school boards of Juda and Brodhead, which promptly denied their detachment/attachment scheme. Parents then took the matter to the Wisconsin School District Boundary Appeals Board ("WSDBAB"). By order dated June 23, 1986, and numbered 86-20, the WSDBAB reversed the school boards and granted the petition for detachment/attachment ("WSDBAB Order 86-20").
 
 
 3
 The following month, however, a group of property-owners from Juda filed a petition with the Clerk of Green County, defendant-appellee Robert Severson, calling for a referendum on WSDBAB Order 86-20 pursuant to Wis.Stat. Sec. 117.035(1)(a). This section of the Wisconsin Code provides that, if within 30 days of an order such as WSDBAB Order 86-20 a petition requesting a referendum on the order is filed with the county clerk, and that petition is signed by at least 500 residents of the proposed reorganized school district or 10% of the residents of either district, "the order shall not become effective until it has been approved at the referendum by each affected school district by a majority vote [in each district]." Severson duly scheduled the referendum to coincide with the September, 1986 primary elections, and published notices.
 
 
 4
 Sensing their impending defeat, Parents tried to headoff the referendum before it took place. They sued in Green County Circuit Court for an injunction to stop the referendum, claiming that the petition was defective because it lacked the requisite number of valid signatures. See State ex rel. Dieckhoff v. Severson, 145 Wis.2d 180, 426 N.W.2d 71 (App.1988). Although the circuit court originally granted the injunction and barred the referendum, the circuit court ultimately ruled that the referendum petition was valid and ordered Severson to hold the referendum. See id. at 188-89, 426 N.W.2d at 73.
 
 
 5
 Soon after Severson re-scheduled the referendum he was again enjoined from conducting it, as Parents sought and received a stay from the Wisconsin Court of Appeals pending resolution of Parents' appeal to that court. That appeal proved unsuccessful: the Wisconsin Court of Appeals rejected Parents' challenges to the referendum petition and their other arguments. Id. at 190-203, 426 N.W.2d at 73-78. The court specifically rejected Parents' claim that, under Wis.Stat. Sec. 117.01(7),[2] they had already effected a "de facto reorganization" of Brodhead district. Dieckhoff, 145 Wis.2d at 200-03, 426 N.W.2d at 77-78.
 
 
 6
 Several days after this decision by the Wisconsin Court of Appeals, Severson again re-scheduled the referendum, this time setting it for July 21, 1988. At long last, on that date, the referendum was held; just two days after the Wisconsin Supreme Court put the last nail in the coffin of Parents' state court suit by denying review. State ex rel. Dieckhoff v. Severson, 145 Wis.2d 910, 428 N.W.2d 557 (1988) (table). The results, as officially certified by Severson, revealed that the members of the Juda School District had voted to reject WSDBAB Order 86-20 by a margin of 285 to 14, and the members of Brodhead had voted to affirm the order 187 to 76. (Wis.Stat. Sec. 117.035(1)(a) requires that both affected school districts approve of a detachment/attachment scheme.)
 
 
 7
 Such a litigious battle did not go unnoticed in the Green County press. Several front-page articles appeared in the local newspapers chronicling the progression of the dispute, many of which appeared over one month before the July 21st referendum and specifically gave notice of the referendum. Green County's only radio station also conducted several broadcasts about the referendum, again giving the date of the referendum. In addition, pursuant to Wis.Stat.Ann. Sec. 10.06(2)(n) (West Supp.1989),[3] Severson published formal election notices concerning the referendum in June and July in two local newspapers: the Independent Register and the Monroe Evening Times.
 
 
 8
 After the referendum results had been certified, the Wisconsin authorities named in this action recognized the results and declared WSDBAB Order 86-20 void. Soon thereafter, Parents brought suit in the Western District of Wisconsin under 42 U.S.C. Sec. 1983 ("Sec. 1983"). They sought a preliminary injunction, as well as a judgment setting aside the referendum and granting monetary damages.[4] After a hearing, the district court denied Parents' preliminary injunction motion. Parents pushed on with their effort to overturn the referendum, claiming constitutional violation in Severson's failure to conduct the election within 90 days (excluding judicially stayed periods) of the filing of the referendum petition as required by the Wisconsin Code, and in Severson's failure to follow completely the Wisconsin Code's notice requirements applicable to this referendum. The parties agreed that material facts were not in dispute, and thus the case was submitted on cross motions for summary judgment.
 
 
 9
 By memorandum opinion and order dated January 9, 1989, the district court granted summary judgement in favor of Severson and Intervenor Juda School District and against Parents, and dismissed Parents' complaint with prejudice. From that decision, Parents brought this timely appeal.
 
 II
 
 10
 Parents' primary quarrel is with the district court's disposition of their arguments regarding the "maladministration" of the referendum.[5] Because that disposition came in the context of a grant of summary judgment, we review the matter de novo to determine whether the record as a whole establishes that Severson was entitled to judgment as a matter of law. Unit Trainship, Inc. v. Soo Line R.R. Co., 905 F.2d 160, 162 (7th Cir.1990); Patrick, 901 F.2d at 564-65.
 
 
 11
 When a litigant invokes Sec. 1983 and challenges in federal court the conduct of a state or local election, the federal court is faced with, among other policy concerns, the difficult task of balancing the protection of the fundamental right to vote enshrined in the first and fourteenth amendments with the avoidance of excessive entanglement of federal courts in state and local election matters (i.e., federalism). In Bodine v. Elkhart County Election Bd., 788 F.2d 1270 (7th Cir.1986), we examined these concerns and issues and adopted a standard for resolving such claims.[6] Since deciding Bodine, we have revisited these concerns and ratified the approach taken in Bodine. See, e.g., Kasper v. Board of Election Comm'rs, 814 F.2d 332, 340-41 (7th Cir.1987), aff'g Kasper v. Hayes, 651 F.Supp. 1311, 1314-15 (N.D.Ill.1987). Parents have given us no reason to reexamine here the underpinnings of Bodine, which is fully dispositive of this case.
 
 
 12
 Drawing on extensive and well-reasoned precedent, we stated in Bodine:
 
 
 13
 It is not every election irregularity ... which will give rise to a constitutional claim and an action under section 1983.... [S]ection 1983 is implicated only when there is willful conduct which undermines the organic processes by which candidates are elected.
 
 
 14
 788 F.2d at 1271-72 (emphasis in original) (quotations and citations omitted). The application of this standard to Parents' claims of "maladministration" of the referendum reveals that their claims must fail.
 
 
 15
 Parents first highlight Severson's failure to abide by the technical notice requirements contained in Wis.Stat. Secs. 117.035(1)(c), 985.01(1) and 985.07(2). Taken together, these statutes require the county clerk, when conducting the specific type of referendum involved here, to publish notices regarding the referendum once each week for consecutive weeks, the last notice to be published at least one week before the referendum. The notices published by Severson did not meet these requirements; instead, Severson followed the notice requirements found in Wis.Stat. Sec. 10.06(2)(n), see supra note 3, which apply generally to special county referenda. (The district court found that Severson was "unaware" of the requirements contained in Sec. 117.035, but that he "attempted to comply with the mandate of the Wisconsin Court of Appeals and the Wisconsin Statutes.")
 
 
 16
 In their effort to establish that this technical violation of the Wisconsin Code amounts to "willful conduct which undermines the organic processes by which candidates are elected," Bodine, 788 F.2d at 1272, Parents raise two points. First, Parents argue that this notice requirement was "jurisdictional" and "mandatory." (Under Wisconsin law, some election notice statutes are only "directory" and thus only "substantial compliance" is required. See Gradinjan v. Boho, 29 Wis.2d 674, 139 N.W.2d 557 (1966); Sommerfield v. Board of Canvassers, 269 Wis. 299, 69 N.W.2d 235 (1955).) Second, Parents note that the voter turnout for this referendum was only 34% of the turnout in a referendum on consolidation conducted in the same school districts three years earlier. We are underwhelmed. Even accepting both of these assertions as true, neither of these factors, nor their combination, come within shouting distance of the Bodine standard. Parents have raised no evidence that even suggests that Severson wilfully set out to give inadequate notice; on the contrary, the evidence suggests that Severson was attempting in good faith to comply with the Wisconsin Code's notice provisions. Further, in light of the extensive local coverage of the referendum and Severson's official (if technically insufficient) publication of notice, it is clear that the "organic process" of the election was not affected. Moreover, even assuming that some potential voters went unnotified, Parents have given us no reason to suppose that enough of these voters would have voted "yes" to put a dent into the overwhelming 285 to 14 loss Parents suffered in Juda School District. In sum, Parents' notice argument is meritless.
 
 
 17
 Second, Parents make much of Severson's failure to conduct the referendum within the statute of limitations. The Wisconsin Code requires that referenda to overturn administrative orders such as WSDBAB Order 86-20 must be conducted within 90 days of the filing of the petition calling for the referendum. Wis.Stat. Sec. 117.035(1)(c). Had it not been for Parents' state court suit, that 90-day period would have expired on or about October 23, 1986. Severson originally scheduled the referendum for September 9, 1986, well within the statutory period. Parents foiled the September, 1986 referendum, however, by seeking and receiving an injunction from the Green County Circuit Court. Severson's second attempt to schedule the referendum was also foiled by Parents when they received a stay from the Wisconsin Court of Appeals. Ultimately, that court ordered that the referendum be held, and, a few days later, Severson re-scheduled it for the fourth and last time.
 
 
 18
 Adding up all the non-judicially stayed time periods, it does indeed appear that more than 90 days elapsed between the filing of the referendum petition and the conducting of the referendum; a wholly unsurprising fact, given that the petition was filed in July, 1986 but, because of the state court litigation, the referendum was not held until over two years later. It most certainly does not appear, however, that this technical violation was willful. The very evidence presented by Parents to try to establish that Severson was aware of the statute of limitations reveals that Severson was in fact attempting in good faith to abide by it, juggling at the same time the need to abide by the various court orders and the need to notify the community and to prepare for and conduct the referendum. Nor does it appear that the delay attributable to Severson had any negative effect on the organic process of the election (i.e., voter disenfranchisement, vote dilution, etc.). If anything, the additional time taken by Severson to ensure that he was honoring court orders and that the referendum was well-conducted likely had a net positive effect on the fundamental fairness of the election. (Again, Parents' reliance on the argument that the 90-day statute is "jurisdictional" is uncompelling.) Thus, Parents argument regarding the 90-day statute also fails the Bodine standard.[7]
 
 III
 
 19
 As in Bodine, Parents here "have alleged nothing more than garden variety election irregularities that could have been adequately dealt with through the procedures set forth in [state law]." 788 F.2d at 1272.[8] None of these claimed irregularities rise to the level of a constitutional claim cognizable under Sec. 1983. Therefore, the district court's grant of summary judgment on that basis is
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 The reasons for this move are unclear: Parents claim that they wanted their children to attend the (allegedly better) Brodhead public schools free of charge, but the record reflects that a substantial number of the landowners included in the original detachment/attachment petition did not have school-age children, and a good number, while they owned property in Juda, did not even reside there
 
 
 [2]
 This section provides that "no appeal or other action attacking the legality of the formation of a school district, [broadly defined as "all school districts in this state, however created or reorganized"] ... may be taken after the period provided by s. 893.74." Wis.Stat. Sec. 893.74 in turn prohibits any challenge to the legality of the formation of a school district "after the school district has exercised the rights and privileges of a school district for a period of 90 days."
 
 
 [3]
 This section requires the county clerk to publish notice of "any special county referendum" on the fourth Tuesday preceding the referendum and on the day preceding the referendum
 
 
 [4]
 Parents have since abandoned and/or dismissed their claims for monetary damages against all defendants
 
 
 [5]
 Parents also pursue here a curious and ill-formed argument regarding the Wisconsin statutory scheme. As best it can be understood, their argument appears to be that the combination of WSDBAB Order 86-20 and Wis.Stat. Sec. 117.01(7), see supra note 2, conferred on them a substantive right to be a part of the Brodhead School District, which right "vested" once their children had been in attendance at the Brodhead schools for over 90 days. This argument must be rejected for (at least) two reasons. First, as the Wisconsin Court of Appeals made clear in rejecting Parents' "de facto reorganized district" argument, see Dieckhoff, 145 Wis.2d at 202, 426 N.W.2d at 78, the WSDBAB order and/or the general administrative scheme did not (and cannot) grant Parents a "right," vested or otherwise, to be a part of the Brodhead District because Wisconsin law did not recognize their attempted jump to Brodhead unless and until it was approved in the properly called-for referendum. See Wis.Stat. Secs. 117.01(1)(d) and 117.035(1) & (3). Second, it became apparent at oral argument that this argument has now mutated into a facial challenge to Wisconsin's statutory scheme for these detachment determinations, to wit: "It violates the constitution to allow a 'town hall vote,' however conducted, to 'divest' administrative-petition winners of their 'right' to move school districts." As Severson's counsel noted at oral argument, Parents have waived this facial challenge--which is quite dubious in any event--by failing to raise it until their appeal in this court. Patrick v. Jasper County, 901 F.2d 561, 566 (7th Cir.1990)
 
 
 [6]
 In point of fact, the standard adopted in Bodine was first enunciated by Judge Tone in Hennings v. Grafton, 523 F.2d 861 (7th Cir.1975), and was widely accepted in the other federal circuits at the time. See Bodine, 788 F.2d at 1272 (citing essentially identical standards used in other circuits). The approach adopted in Bodine and applied here remains consistent with that employed in other circuits. See, e.g., Soules v. Kauaians for Nukolii Campaign Comm., 849 F.2d 1176, 1183-84 (9th Cir.1988)
 
 
 [7]
 Our holding that Parents have failed to state a claim under Sec. 1983 renders unnecessary an examination of the eleventh amendment and 28 U.S.C. Sec. 1341 arguments raised by the State defendants-appellees
 
 
 [8]
 For example, Wis.Stat.Ann. Sec. 5.07 (West Supp.1989) and Wis.Stat. Sec. 5.08 provide an avenue for relief when an election official is failing or has failed to conduct an election in a manner consistent with Wisconsin law. Parents have evidently chosen not to take advantage of this or any other state law procedure