Steven G. BUTZLAFF, Petitioner-Respondent,

v.

WISCONSIN PERSONNEL COMMISSION,
Respondent-Appellant.

Court of Appeals

*No. 91-1728. Submitted on briefs December 23, 1991.—Decided
January 28, 1992.*

(Also reported in 480 N.W.2d 559.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Stephen M. Sobota,* assistant attorney general.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Thomas H. Brush* of *Lee, Kilkelly, Paulson & Kubaker, S.C.* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. The Wisconsin Personnel Commission appeals a judgment reversing its decision to dismiss Steven Butzlaff's complaint which alleged that the Department of Health and Social Services discriminated against him in violation of the Family and Medical Leave Act (FMLA), sec. 103.10, Stats. The commission argues that the trial court erred by failing to give deference to the commission's decision and that the FMLA does not apply to Butzlaff because he was not employed by the state for more than fifty-two consecutive weeks immediately preceding the disputed action. We conclude that the commission's decision is reviewable de novo and that the FMLA does apply to Butzlaff because sec. 103.10(2)(c) does not require that the fifty-two consecutive weeks immediately precede the disputed action. The judgment is affirmed.

Butzlaff was employed as a security officer at the University of Wisconsin-Madison, from November 1984 to July 1989. In July 1989, he left state employment and accepted a position with the Dane County Sheriff's Department. On January 29, 1990, the state reinstated Butzlaff as a security officer at the Mendota Mental Health Institute. He was reinstated in the same position

he held when he left in July 1989, and his sick leave and other benefits were also reinstated.

On May 2, 1990, Butzlaff was fired. He filed a complaint with the commission alleging that he was fired in violation of the FMLA because he had to take time off from work to attend to his pregnant wife and ill child. The Department of Health and Social Services filed a motion to dismiss. The commission granted the department's motion on the grounds that the FMLA did not apply to Butzlaff because he did not work for the state for more than fifty-two consecutive weeks immediately preceding his discharge. The trial court, reviewing the decision de novo, held that the FMLA did apply to Butzlaff because sec. 103.10(2)(c), Stats., does not require that the fifty-two consecutive weeks immediately precede the disputed action.

## STANDARD OF REVIEW

The commission argues that the trial court erred by failing to give deference to its interpretation of sec. 103.10(2)(c), Stats. It contends that the trial court should have given due weight or deference to its decision. We disagree.

This case deals with the interpretation and application of sec. 103.10(2)(c), Stats. The interpretation and application of a statute to undisputed facts is a question of law. *William Wrigley, Jr. Co. v. DOR,* 160 Wis. 2d 53, 69, 465 N.W.2d 800, 806 (1991). "The black letter rule is that a court is not bound by an agency's conclusions of law." *Id.* (quoting *Local No. 695 v. LIRC,* 154 Wis. 2d 75, 82, 452 N.W.2d 368, 371 (1990)). However, a court will give deference to an agency's interpretation of a statute where the regular and repeated interpretations of the

statute have been applied in practice over a period of time by the agency charged with the duty of administering the statute, and the agency is therefore presumed to have some special expertise. *Local 695,* 154 Wis. 2d at 83–84, 452 N.W.2d at 371–72. On the other hand, where a legal question is concerned and there is no evidence of any special expertise or experience by the agency, a court shall afford no weight to an agency interpretation. *Wrigley,* 160 Wis. 2d at 71, 465 N.W.2d at 807 (citing *Local 695,* 154 Wis. 2d at 84, 452 N.W.2d at 372).

██

In *Wrigley,* 160 Wis. 2d at 71, 465 N.W.2d at 807, the supreme court concluded that the commission's interpretation of "solicitation" under 15 U.S.C. § 381(b)(1) (1976), was subject to de novo review because the commission had never interpreted the scope of "solicitation" under § 381(b)(1) prior to its decision in that case. Similarly, this commission has never interpreted previously whether sec. 103.10(2)(c), Stats., requires that an employee work for the employer for more than fifty-two consecutive weeks immediately preceding his discharge. Thus, there is no evidence that the commission has special expertise through regular and repeated interpretations of sec. 103.10(2)(c). Consequently, the trial court correctly did not give deference to the commission's decision. We also review the commission's decision de novo.

## SECTION 103.10(2)(c), STATS.

Section 103.10(2)(c) provides:

> This section only applies to an employe *who has been employed by the same employer for more than 52 consecutive weeks* and who worked for the

employer for at least 1,000 hours during the preceding 52-week period. (Emphasis added.)

An employee must meet two requirements before he is entitled to the benefits of the FMLA. Those requirements are: (1) the employee has been employed by the same employer for more than fifty-two consecutive weeks; and (2) the employee worked for the employer for at least 1,000 hours during the preceding fifty-two-week period. The commission does not argue that Butzlaff failed to meet the 1,000-hour requirement and, therefore, we assume he did. Thus, the only issue remaining is whether Butzlaff met the fifty-two consecutive week requirement. The answer to this question depends upon the interpretation of "has been employed . . . for more than 52 consecutive weeks."

In construing a statute, we must give effect to legislative intent. *Sturgis v. Town of Neenah Bd. of Canvassers,* 153 Wis. 2d 193, 198, 450 N.W.2d 481, 483 (Ct. App. 1989). We ascertain legislative intent by first looking to the language of the statute, and only if that language is ambiguous are we permitted to discern legislative intent by looking beyond the language to the scope, history, context, subject matter and object of the statute. *Id.* A statute is ambiguous if it is capable of two or more reasonable interpretations. *See State ex rel. Newspapers, Inc. v. Showers,* 135 Wis. 2d 77, 87, 398 N.W.2d 154, 159 (1987). We also interpret a statute to avoid absurd or unreasonable results. *See id.* Additionally, we liberally construe statutes that are remedial in nature. *See Wisconsin Bankers Ass'n v. Mutual S & L Ass'n,* 96 Wis. 2d 438, 451, 291 N.W.2d 869, 876 (1980).

Two constructions of the fifty-two consecutive week requirement are postulated. The commission interprets the phrase "has been employed . . . for more than 52

consecutive weeks" to require that Butzlaff be employed by the state for more than fifty-two consecutive weeks immediately preceding his discharge. It argues that the legislature's use of the present perfect verb tense, "has been employed," means a condition beginning in the past and just ending or continuing into the present. *See* Harry Shaw, Errors in English and Ways to Correct Them, 328 (2d ed. 1970). Therefore, the commission argues that the use of the present perfect tense indicates that the fifty-two consecutive weeks must immediately precede Butzlaff's discharge.

On the other hand, Butzlaff contends that the phrase requires only that he be employed by the state for more than fifty-two consecutive weeks which need not immediately precede his discharge, and as long as he had worked for the state for at least 1,000 hours during the fifty-two-week period preceding his discharge, he would be covered under the FMLA. He argues that the word "preceding" modifies only the fifty-two-week period of the 1,000-hour requirement, and not the fifty-two consecutive week requirement. Butzlaff also argues that the legislature's use of the word "preceding" in the 1,000-hour requirement and the absence of the word in the fifty-two consecutive week requirement indicates that the legislature did not intend that the fifty-two consecutive weeks of employment immediately precede the disputed action. Butzlaff and the commission agree that the fifty-two consecutive week requirement is ambiguous.

We also conclude that the fifty-two consecutive week requirement of sec. 103.10(2)(c), Stats., is ambiguous because it is capable of two reasonable interpretations. Thus, we look beyond the statute's language to its scope, context, subject matter and object to discern the legislative intent.

1034

The commission argues that we must strictly construe the FMLA when determining to whom it applies. This argument is not supported by Wisconsin law. Rather, we liberally construe the FMLA because it is remedial in nature. *See Wisconsin Bankers,* 96 Wis. 2d at 451, 291 N.W.2d at 876.

1987 Senate Bill 235 (April 30, 1987), which created the FMLA, states that its purpose is to require employers to permit employees to take family and medical leave, and to prohibit employers from interfering with their employees' leave rights. The legislature's primary intent was to create employee leave rights. The act sets forth the minimum amount of leave time that employers are required to allow, but also states that employers may provide more generous leave rights to employees. *See* sec. 103.10(2)(a), Stats. This indicates that the legislature also intended employee leave rights to be expansive, not limited.

The initial draft of sec. 103.10(2)(c), Stats., stated:

> This section does not apply to a person hired for
> seasonal employment as described in s. 102.11(1)(b),
> or an employe hired for less than a 26-week period.

*See* 1987 Senate Bill 235. This draft suggests that the legislature intended to exclude seasonal and temporary employees from accruing family and medical leave rights. The present language does not diminish or nullify this intent. The 1,000-hour requirement excludes part-time employees, and the fifty-two consecutive week requirement excludes seasonal, summer and temporary employees. We can find nothing in the legislative history to suggest that the legislature intended to exclude long-term employees who were unemployed for a short time and subsequently reinstated, or that it intended the fifty-two consecutive weeks to immediately precede the

disputed action. Rather, the legislative history demonstrates that the legislature wanted to protect employers from claims by short-term employees and, at the same time, provide long-term employees with leave rights.

The commission contends that interpreting the fifty-two consecutive week requirement as not having to immediately precede the disputed action renders absurd results. We disagree. We conclude that interpreting the fifty-two consecutive week requirement as not having to immediately precede the disputed action is more consistent and in line with the legislative intent. It is contrary to the expansive purpose of the FMLA to construe sec. 103.10(2)(c), Stats., so that the FMLA would not apply to a long-term employee who had worked for more than 200 consecutive weeks where the employee temporarily left employment but was reinstated with full benefits and at the same level of office. A situation where a long-term employee is entitled to full employee benefits but not entitled to family and medical leave rights is inconsistent with the legislative intent and the rules of liberal construction.

We construe the phrase "has been employed by the same employer for more than 52 consecutive weeks" to mean any fifty-two consecutive weeks of employment for this employer, not the fifty-two consecutive weeks immediately preceding the disputed action. This interpretation leads to a reasonable result and is consistent with the legislative intent, as evidenced by the legislative history and purpose of the FMLA.

Thus, sec. 103.10(2)(c), Stats., does not require an employee to be employed by the same employer for more than fifty-two consecutive weeks immediately preceding the disputed action. It requires only that: (1) the

employee be employed by the same employer for more than fifty-two consecutive weeks; and (2) the employee worked for the same employer for at least 1,000 hours during the fifty-two-week period preceding the disputed action. Consequently, because Butzlaff worked for the state for more than fifty-two consecutive weeks and because there is no dispute that he worked for the state for at least 1,000 hours during the fifty-two-week period preceding his discharge, the FMLA does apply to him and he is entitled to a hearing to determine whether he was fired in violation of the FMLA.

*By the Court.*—Judgment affirmed.