STATE of Wisconsin, Plaintiff-Respondent,

v.

Daniel T. SHEA, Defendant-Appellant.†

Court of Appeals

*No. 97–2345–CR. Submitted on briefs May 11, 1998.——Decided August 13, 1998.*

(Also reported in 585 N.W.2d 662.)

†Petition to review denied.

418

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey D. Knickmeier* of Stoughton.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

DYKMAN, P.J. Daniel T. Shea appeals from a judgment convicting him of two counts of uttering a forgery, contrary to § 943.38(2), STATS., and one count of fraudulent use of a financial transaction card, contrary to § 943.41(5)(a)1.a, STATS. First, Shea alleges that his conviction for fraudulent use of a financial transaction card should be vacated because: (1) the State failed to produce sufficient evidence to sustain the conviction; (2) the jury instructions were inappropriate; and (3) trial counsel's failure to object to these jury instructions made her representation ineffective. We conclude that the State proved the elements of this charge, and that the jury instructions were appropriate. Trial counsel's assistance was therefore effective.

Second, Shea contends that testimony regarding events allegedly occurring in Door County were improperly admitted to prove an element of an offense charged in Dane County, and trial counsel's failure to object to the admission of this testimony made her representation ineffective. We disagree and conclude that the testimony was properly admitted.

Finally, Shea asserts that his conviction for uttering a forgery should be vacated, because the State failed to prove that he acted with an intent to defraud. We disagree because § 943.38(2), STATS., does not require that the offender act with an intent to defraud. Accordingly, we affirm the judgment.

### BACKGROUND

In late 1994, Daniel Shea and Mary Bergin met, and thereafter became involved in a relationship. On June 10, 1995, the relationship apparently ended. Following the break-up, Bergin discovered that her Mastercard credit card, which was in her possession, had been used without her consent to make purchases.

One of these purchases included a dinner at La Paella, a Madison area restaurant. Bergin testified that she had dinner with Shea at La Paella on the date the charge was made, but that Shea had informed her that he had paid for the dinner. Another purchase was made while Shea and Bergin were vacationing together over the Memorial Day weekend in Door County. Bergin's Mastercard had been used to purchase a library table from the Olde Orchard Antique Mall. The card was also used to order computer equipment over the phone. And finally, Bergin's credit card was used at Maher's Alterations, a Madison area tailor, to pay for some alterations.

After discovering these unauthorized charges to her account, Bergin contacted the police, who investigated. On June 21, 1995, Shea was arrested, and a search warrant was executed on his one-bedroom apartment two days later. During the search, the police found pieces of computer equipment and the library table that had been purchased with Bergin's Mastercard. In addition, police found a Mastercard billing statement addressed to Bergin that was dated June 8, 1995. The statement listed charges to Maher's Alterations, La Paella Restaurant, Olde Orchard Antiques, two computer venders in California and one computer vendor in Texas. The police also found credit card receipts from Maher's Alterations, La Paella Restaurant and Olde Orchard Antique Mall. The receipts from Maher's Alterations and La Paella Restaurant were both signed "M. Bergin," but Bergin testified that she did not make either of these charges.

On June 29, 1995, Shea apparently wrote a letter to Bergin apologizing for his dishonest activity and authorizing her to return what he had purchased with her credit card. Shea was convicted of two counts of

uttering a forgery and one count of fraudulent use of a financial transaction card. He now appeals.

## DISCUSSION

### 1. *Fraudulent Use of Financial Transaction Card*

Shea first contends that his convictions should be vacated because the State failed to produce sufficient evidence to satisfy the elements necessary for a conviction under either § 943.41(5)(a)1.a, STATS., or § 943.38(2), STATS. In *State v. Poellinger,* 153 Wis. 2d 493, 451 N.W.2d 752 (1990), the court set forth the following test for reviewing the sufficiency of the evidence:

> [I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*Id.* at 507, 451 N.W.2d at 757–58 (citations omitted).

Shea alleges that § 943.41(3), STATS., requires the State to prove that the offender acquired actual possession of a cardholder's financial transaction card without consent. He argues that while the State established that he used the information on Bergin's

Mastercard to obtain goods and services, it did not establish that he acquired actual possession of her card. Therefore, it failed to satisfy the actual possession element.

■

Shea's assertion presents a question of statutory interpretation. Because statutory interpretation is a question of law, we apply a *de novo* standard of review. *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 978, 542 N.W.2d 148, 149 (1996). The ultimate goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Stockbridge Sch. Dist. v. DPI*, 202 Wis. 2d 214, 219, 550 N.W.2d 96, 98 (1996). Our first inquiry is always to the language of the statute. *Cary v. City of Madison*, 203 Wis. 2d 261, 264, 551 N.W.2d 596, 597 (Ct. App. 1996). If a statute is clear on its face, our inquiry ends, for we are prohibited from looking beyond the unambiguous language used by the legislature. *Peter B. v. State*, 184 Wis. 2d 57, 71, 516 N.W.2d 746, 752 (Ct. App. 1994). However, if the language is ambiguous, we may look to the history, scope, context, subject matter, and object of the statute to discern legislative intent. *Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 164, 558 N.W.2d 100, 103 (1997). Statutory language is ambiguous if reasonably well-informed individuals could differ as to its meaning. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 662, 539 N.W.2d 98, 103 (1995).

We begin with the language of § 943.41(5)(a), STATS., which reads as follows:

> 1. No person shall, with intent to defraud the issuer, a person or organization providing money, goods, services or anything else of value or any other person:

> a. Use, for the purpose of obtaining money, goods, services or anything else of value, a financial transaction card obtained or retained in violation of sub. (3) or a financial transaction card which the person knows is forged, expired or revoked . . . .

Because subparagraph (5)(a)1.a incorporates subsection (3) by reference, we must also examine subsection (3). Section 943.41(3)(a), STATS., provides in part:

> No person shall acquire a financial transaction card from the person, possession, custody or control of another without the cardholder's consent . . . .

Shea argues that these statutory provisions, when read together, require that an offender acquire actual possession of the financial transaction card, and that using the information on the card is insufficient. We conclude that this hinges on the definition of "financial transaction card."

■■

Section 943.41(1)(em), STATS., defines financial transaction card as an "instrument or device issued by an issuer for the use of the cardholder in any of the following: (1) [o]btaining anything on credit; (2) [c]ertifying or guaranteeing the availability of funds sufficient to honor a draft or check; [or] (3) [g]aining access to an account." Section 943.41(1)(em). The terms "instrument" and "device" are not defined in the statute. If the legislature does not assign a technical meaning to a statutory word, § 990.01(1), STATS., provides that these words "shall be construed according to common and approved usage." Section 990.01(1). We have frequently recognized dictionaries as an appropriate source of such usage. *State v. McCoy*, 143 Wis. 2d 274, 287, 421 N.W.2d 107, 111 (1988). This does not mean, however, that we find this statute to be ambigu-

ous. "The necessity of looking to a standard dictionary to ascertain the usual meaning of a word does not render the word ambiguous as used in a statute." *State ex. rel. Smith v. City of Oak Creek*, 139 Wis. 2d 788, 798 n.6, 407 N.W.2d 901, 905 (1987).

Device is defined as "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." *See* WEBSTER'S THIRD INT'L DICTIONARY 618 (1993). Instrument is defined as "a means whereby something is achieved, performed, or furthered." *Id.* at 1172. We interpret the definitions of these terms to be broad enough to indicate that the legislature did not intend actual possession of the credit card to be an element of the crime.

This interpretation of the unambiguous statutory language is appropriate because the account number can be used by the cardholder in the same manner as the actual credit card to perform most of the functions set out in § 943.41(1)(em), STATS. For example, cardholders can obtain items on credit by calling a merchant on the phone and providing their account number. We are satisfied that the language of the statute should not be read so narrowly as to require that an offender acquire actual possession of the victim's financial transaction card.

Shea next contends that the State failed to produce sufficient evidence for a conviction, because the district attorney did not utilize the precise language of the statute when addressing the jury and questioning witnesses. Instead of using the statutory term "consent," the district attorney used the term "authorize" or "authorization." While the State concedes that it may have erred, it essentially argues that the error was harmless. An error is harmless if there is no reasonable probability that the error contributed to the conviction.

*State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–232 (1985).

Although the legislature used the word consent, it did not define that word in the statute. Section 990.01(1), STATS., requires that we must construe the term "consent" according to common and approved usage. We previously noted that dictionaries are an appropriate source of such usage. *McCoy*, 143 Wis. 2d at 287, 421 N.W.2d at 111. "Authorization" and "consent" are both synonymous with "permission." *See* WEBSTER'S THIRD INT'L DICTIONARY 146, 482 (1993). We therefore conclude that if the State's use of the term "authorization" was in error, the error was harmless because it is improbable that its use contributed to the jury's decision to convict Shea.

Shea also argues that the State failed to prove that he violated the statutory elements of § 943.38(2), STATS., because it failed to show that he intended to defraud Bergin when he allegedly signed the Mastercard receipts at La Paella and at Maher's Alterations. Section 943.38(2) reads as follows:

> Whoever utters as genuine or possesses with intent to utter as false or as genuine any forged writing or object mentioned in sub. (1), knowing it to have been thus falsely made or altered, is guilty of a Class C felony.

While § 943.38(2) does not specifically require that an offender act with the intent to defraud, Shea contends that the intent to defraud is an element of the statute by incorporation. He argues that the reference in subsec. 2 to subsec. 1 should be interpreted as incorporating the requirement in subsec. 1 that the offender act with an intent to defraud. Section 943.38(1) reads, in pertinent part, as follows:

(1)   Whoever *with intent to defraud* falsely makes or alters a writing or object of any of the following kinds . . :

(a)   A writing or object whereby legal rights or obligations are created, terminated or transferred, or any writing commonly relied upon in business or commercial transactions as evidence of debt or property rights; or

(b)   A public record or a certified or authenticated copy thereof; or

(c)   An official authentication or certification of a copy of a public record; or

(d)   An official return or certificate entitled to be received as evidence of its contents.

(Emphasis added.)

■

Our first inquiry must be to the language of the statute, particularly to the language in subsec. 2 that refers to subsec. 1. Subsec. 2 states that an offender violates the subsection when he or she knowingly "utters . . . any forged writing or object mentioned in sub. (1)." Section 943.38(2), STATS. Subsec. 1 sets out four types of writings or objects. Section 943.38(1)(a)–(d). Based on the unambiguous language of the statute, we are satisfied that subsec. 2 does not incorporate the requirement of subsec. 1 that the offender act with an intent to defraud. Subsec. 2 merely incorporates the four types of writings or objects described within subsec. 1. We conclude that subsec. 2, when read alone or together with subsec. 1, does not require an offender to act with an intent to defraud. Consequently, there was sufficient evidence to convict Shea of violating § 943.38(2).

2.   *Ineffective Assistance of Counsel*

### a. Jury Instructions

Shea also argues that the trial court improperly instructed the jury as to the elements of § 943.41(5)(a)1.a, STATS. Shea concedes that his trial counsel did not object to the court's jury instructions. We therefore may not review this issue. *See* § 805.13(3), STATS.; *State v. Schumacher*, 144 Wis. 2d 388, 409, 424 N.W.2d 672, 680 (1988). We may, however, review an alleged error in the jury instructions under a claim of ineffective assistance of counsel. *Id.* at 408, 424 N.W.2d at 680. Shea claims that his trial counsel was ineffective.

To establish an ineffective assistance of counsel claim, Shea must satisfy a two-part test. First, he must show that his counsel's performance was deficient. Second, he must prove that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If Shea fails to meet either the deficient performance or prejudice component of the test, we need not address the other component. *See* *State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69, 76 (1996).

Shea alleges that the instructions given to the jury regarding the fraudulent use of a financial transaction card were "incorrect and inappropriate,"[1] because they had "little relation" to the elements identified in the

---

[1] The jury in this case was instructed that fraudulent use of a financial transaction card involves the following elements:

1. the defendant used a financial transaction card;
2. such card was used without *authorization*;
3. the defendant used such card for the purpose of obtaining goods and services;

standard jury instructions[2] or in the statutory elements set out in § 943.41(5)(a), STATS. In particular, Shea contends that under the instructions given to the jury, the State was not required to prove that he acquired actual possession of Bergin's card. Also, Shea argues that the jury was improperly instructed that it could convict him if they found that he used Bergin's card without "authorization," when the legislature used the term without "consent." Shea contends that his trial counsel's failure to object to these instructions qualifies as ineffective assistance of counsel.

We conclude that Shea has not shown that he was prejudiced by the jury instruction. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. As we have discussed, § 943.41(5)(a), STATS., does not require that an offender acquire actual possession of the financial transaction

---

4.   the defendant acted with intent to defraud the issuer of the card or any other person or organization providing money, goods, services, or anything else of value.

(Emphasis added.)

[2] WIS J I—CRIMINAL 1497 sets forth the following elements to assist the jury in determining whether the defendant fraudulently used the financial transaction card, contrary to § 943.41 (5)(a), STATS.: (1) the defendant used a financial transaction card; (2) such card was stolen; (3) the defendant used such a financial transaction card for the purpose of obtaining money, goods, services, or anything of value; (4) the defendant acted with intent to defraud the issuer of the card or any person or organization providing money, goods, services, or anything else of value.

card. Furthermore, we have stated that the State's use of the term authorization rather than the term consent is harmless error, if error at all. Therefore, we conclude that the instructions given to the jury as to the elements of § 943.41(5)(a), STATS., were not prejudicial.

b.   Admission of Evidence

Shea also argues that his trial counsel's failure to object to the admission of evidence regarding his use of Bergin's Mastercard to purchase a library table in Door County constituted ineffective assistance of counsel. Shea alleges that the testimony of Floyd Hansen, owner of the Olde Orchard Antique Mall in Door County, should have not been admitted to establish an element of § 943.41(5)(a), STATS., because that crime allegedly occurred in Dane County, not Door County. Shea contends that the admission of Hansen's testimony was "irrelevant, non-probative, and highly prejudicial," and that trial counsel should have objected.

While Shea argues that the admission of Hansen's testimony was irrelevant, non-probative, and highly prejudicial, he fails to tell us why. Hansen's testimony established an element of a crime that Shea allegedly committed; therefore, it is both relevant and probative. Shea fails to cite to any legal authority to support his argument that this testimony was inadmissible. Such an appellate argument is inadequate and will not be considered by this court. *See State v. Shaffer*, 96 Wis. 2d 531, 546, 292 N.W.2d. 370, 378 (1980).

3.   *Discretionary Relief*

.Finally, Shea states that if we find that he is not entitled to relief because his counsel was ineffective, we should provide relief under § 752.35, STATS. This statute allows us to reverse a trial court's judgment if we conclude either (1) the real controversy has not been fully tried, or (2) it is probable that justice has been miscarried. *See* § 752.35. The former requires that the jury was precluded from considering "important testimony that bore on an important issue" or that certain evidence which was improperly received "clouded a crucial issue" in the case. *State v. Hicks*, 202 Wis. 2d 150, 160, 549 N.W.2d 435, 440 (1996). The latter requires that there be a substantial degree of probability that a new trial would produce different results. *State v. Schumacher*, 144 Wis. 2d 388, 400–01, 424 N.W.2d 672, 676–77 (1988)

Shea does not state under which of these two provisions we should provide discretionary relief. He argues that the instructions given to the jury and the admission of Hansen's testimony are sufficient to justify exercising discretionary relief. We disagree. Because the jury instructions and the admission of Hansen's testimony were proper, discretionary reversal is not warranted in this case.

## CONCLUSION

We conclude that the State produced sufficient evidence to convict Shea of both counts of uttering a forgery and one count for fraudulent use of a financial transaction card. We also conclude that trial counsel's failure to object to the jury instructions or the admission of Hansen's testimony did not constitute ineffective assistance of counsel. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.