Steven G. BUTZLAFF, Plaintiff-Respondent,

v.

STATE of Wisconsin DEPARTMENT OF HEALTH AND FAMILY SERVICES, f/k/a Department of Health and Social Services, Defendant-Appellant.

Court of Appeals

*No. 98–0453. Oral argument November 16, 1998.—Decided December 17, 1998.*

(Also reported in 590 N.W.2d 9.)

675

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Richard Briles Moriarty*, assistant attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas H. Brush* and *Scott A. Seid* of *Lee, Kilkelly, Paulson & Kabaker, S.C.* of Madison.

Before Dykman, P.J., Vergeront and Deininger, JJ.

VERGERONT, J.   This appeal requires us to construe § 103.10(13), STATS., the provision of the Family and Medical Leave Act (FMLA) that governs civil actions under the act. The trial court interpreted § 103.10(13) to permit an employee to file an action for damages for violations of the FMLA regardless of whether the employee had been successful in the administrative proceeding specified in § 103.10(12). The court therefore denied the motion of the Wisconsin Department of Health.and Family Services (DHFS) to dismiss Steven Butzlaff's action for damages, even though the personnel commission had decided, after a

hearing, that DHFS had not violated the FMLA and that decision had been affirmed on judicial review. We conclude that, while § 103.10(13) may reasonably be interpreted as the trial court did, the statutory language is ambiguous, and the more reasonable interpretation is that only employees who are successful in the required administrative proceeding and judicial review may bring an action for damages. Therefore, while we agree with the trial court's conclusion that sovereign immunity does not bar Butzlaff's suit against DHFS, we reverse the trial court's order denying summary judgment to DHFS.

## BACKGROUND

Butzlaff was terminated from his position as a security officer III at Mendota Mental Health Institute in April 1990. He filed a complaint with the personnel commission asserting that he was fired because he had to take time off work to attend to his wife and sick child, in violation of § 103.10, STATS., of the FMLA. After a hearing, the commission determined that Butzlaff failed to meet his burden of proving that his employer, DHFS, had violated the FMLA.[1] Butzlaff sought judicial review under § 227.52, STATS., and the circuit court affirmed the decision on March 19, 1997.

---

[1] Although Butzlaff filed his complaint with the personnel commission in June 1990, the hearing on the merits of his claim did not take place until 1994, and the commission's order was not issued until January 1996, after post-hearing briefs were filed. In the interim, an adverse decision by the personnel commission on a procedural ground was reversed by the circuit court. This court upheld that reversal, *Butzlaff v. Wisconsin Personnel Comm'n*, 166 Wis. 2d 1028, 480 N.W.2d 559 (Ct. App. 1992), and the matter was remanded to the personnel commission for a hearing on the merits.

Butzlaff did not appeal that circuit court's decision to this court.

Butzlaff filed this action in circuit court on May 14, 1997, asserting the same violation as that asserted before the personnel commission. He requested damages; fees and costs; reinstatement of his wage rate and status; accounting for pay increases and promotions; expungement of the termination from his record; and "such other relief as may be provided by law." DHFS moved to dismiss the complaint on the ground of sovereign immunity, asserting that either § 103.10(13), STATS., plainly did not permit a civil action unless the employee had prevailed in the administrative proceeding and judicial review, or the statute was ambiguous on that point and therefore not a clear and express consent to sue the state. The trial court denied that motion, concluding that § 103.10(13) was not ambiguous, but, rather, plainly permitted a civil action whether or not the employee had been successful in the administrative hearing and judicial review. DHFS then moved for summary judgment on the grounds of claim preclusion, estoppel of record and issue preclusion, arguing that § 103.10(13) did not clearly express the intent to abrogate these common law doctrines. DHFS stated that it was also continuing to assert that the claim was barred by sovereign immunity. The court denied this motion, reiterating its conclusion that § 103.10(13) plainly permitted a civil action for the same violation, whether or not the employee had been successful in the administrative proceeding and judicial review.

We granted DHFS's petition for leave to appeal the circuit court's non-final order denying its motion for summary judgment.

## DISCUSSION

When we review the grant or denial of summary judgment, we employ the same methodology as the circuit court and consider the issues de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–16, 401 N.W.2d 816, 820–21 (1987). A party is entitled to summary judgment if there are no genuine issues of material fact and the party is entitled to judgment as a matter of law. *Id.* Neither Butzlaff nor DHFS contends there are disputed factual issues that require a trial. The dispute, rather, concerns the proper construction of statutes, and the application of legal standards to undisputed facts, both questions of law, which we review de novo. *See Bahr v. State Inv. Bd.*, 186 Wis. 2d 379, 386, 521 N.W.2d 152, 153 (Ct. App. 1994).

The purpose of statutory interpretation is to discern the legislative intent. *Lincoln Sav. Bank, S.A. v. DOR*, 215 Wis. 2d 430, 441, 573 N.W.2d 522, 527 (1998). We first consider the language of the statute. *Id.* If the language of the statute is plain, we apply that language to the facts at hand. *Id.* If a statute is ambiguous, we look to the scope, history, context, subject matter and object of the statute in order to ascertain legislative intent. *State v. Sample*, 215 Wis. 2d 486, 494, 573 N.W.2d 187, 191 (1998). In interpreting the words of a statute, we are to consider the entire section of the statute and related sections. *Dieckhoff v. Severson*, 145 Wis. 2d 180, 190, 426 N.W.2d 71, 73 (Ct. App. 1988).

A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *Awve v. Physicians Ins. Co.*,

181 Wis. 2d 815, 822, 512 N.W.2d 216, 218 (Ct. App. 1994). Whether a statute is ambiguous is a question of law. *Id.*

We first address DHFS's assertion that sovereign immunity bars this suit. As it did before the trial court, DHFS focuses on the language of § 103.10(13), STATS., which provides:

> (13) CIVIL ACTION. (a) An employe or the department may bring an action in circuit court against an employer to recover damages caused by a violation of sub. (11) after the completion of an administrative proceeding, including judicial review, concerning the same violation.
>
> (b) An action under par. (a) shall be commenced within the later of the following periods, or be barred:
>
> 1. Within 60 days from the completion of an administrative proceeding, including judicial review, concerning the same violation.
>
> 2. Twelve months after the violation occurred, or the department or employe should reasonably have known that the violation occurred.

As Butzlaff points out in his response, DHFS ignores § 103.10(1)(b) which defines an employee under the FMLA as "an individual employed in this state by an employer, except the employer's parent, spouse, or child," and § 103.10(1)(c), which provides:

> (c) Except as provided in sub. (14) (b), "employer" means a person engaging in any activity, enterprise or business in this state employing at least 50 individuals on a permanent basis. "Employer" includes the state and any office, department, independent agency, authority, institution, association, society or other body in state government created or authorized to be created by

the constitution or any law, including the legislature and the courts.

We agree with Butzlaff that the legislature has clearly and expressly waived sovereign immunity in actions by employees under the FMLA.

Article IV, Section 27 of the Wisconsin Constitution provides that "[t]he legislature shall direct by law in what manner and in what court suits may be brought against the state." Therefore, the State of Wisconsin, including its administrative agencies and boards, is immune from suit except where the legislature has consented to suit. *See Bahr*, 186 Wis. 2d at 387, 521 N.W.2d at 154. The consent to suit must be express; it may not be implied. *Id.*

The language in § 103.10(1)(c), STATS., that includes the state and its departments as an employer under the FMLA is free from any ambiguity. It follows, just as plainly, that an employee of a state department is an employee under the FMLA. Therefore when § 103.10(13) permits an "employe" to "bring an action in circuit court against an employer," it is clearly and expressly consenting to suit against the employing state department under the circumstances spelled out in § 103.10(13).

In its reply brief, DHFS did not address Butzlaff's argument that the legislature's inclusion of "the state and any . . . body in state government" in the definition of "employer" is an express waiver of sovereign immunity. We understand from oral argument that DHFS's position is that if there is any ambiguity in § 103.10(13), STATS., concerning the conditions under which employees employed by any entity may be sued, then the legislature has not expressly waived sovereign immunity for suits under § 103.10(13) in those particu-

lar conditions. The result of this position, as DHFS's counsel conceded, is that if § 103.10(13) plainly permits suit by employees who have been successful in the administrative proceedings and judicial review, but is ambiguous on whether it permits suits by employees who have not been successful, then the legislature has waived sovereign immunity as to the former but not the latter.

DHFS provides no authority for its position, and it is inconsistent with our decision in *Bahr*.[2] There we held that the broad language permitting an agency to "sue and be sued" encompassed all types of actions against the agency, in the absence of any statutory language indicating otherwise. *Bahr*, 186 Wis. 2d at 394, 521 N.W.2d at 157. There is no indication anywhere in § 103.10, STATS., that the legislature intended the state and bodies of state government to be employers for certain purposes but not for others, or that the section permitting civil actions, § 103.10(13), is not to apply to the state and bodies in state government on the same terms it applies to other employers. DHFS's argument confuses the statutory consent to suit against the state and its agencies with the statutory conditions for suit that apply to all parties. The former must be clearly expressed to constitute a waiver of sovereign immunity. The latter are interpreted according to the ordinary rules of statutory construction.

We conclude that the inclusion of the "state and . . . any . . . body in state government" in the definition of "employer" in § 103.10(1)(c), STATS., constitutes clear and express statutory consent to suit in any action

---

[2] DHFS's position is also inconsistent with *German v. DOT*, 223 Wis. 2d 525, 533, 589 N.W.2d 651, 655 (Ct. App. 1998), a recent case in which we rejected a similar argument.

against an employer permitted by § 103.10(13). The critical inquiry, therefore, is whether § 103.10(13) permits an employee, such as Butzlaff, who has not prevailed in the administrative proceeding or judicial review, to file a civil action seeking damages for the same violation asserted in that prior proceeding.

DHFS argues that the trial court erred in concluding that § 103.10(13), STATS., plainly permits a civil action for damages whether or not the employee has prevailed in the administrative proceeding and judicial review. According to DHFS, either the statute plainly does not permit this, or it is ambiguous on this point. In the latter case, DHFS contends, the rules of statutory construction and legislative history resolve the ambiguity in favor of its construction.[3] Butzlaff responds that the trial court correctly decided that the statute plainly permits a civil action for damages for the same violation without regard to the result of the prior proceeding, because the language does not contain such a limitation and the legislature would have included

[3] The trial court did not have the benefit of DHFS's argument that although § 103.10(13), STATS., is ambiguous, the more reasonable interpretation is that it permits an employee to bring a civil action only if he or she has prevailed in the administrative proceeding and judicial review. Because of the manner in which DHFS chose to formulate the issues before the trial court, DHFS apparently believed it was sufficient to argue that the section either plainly applied only to prevailing claimants or was ambiguous on that point, and apparently did not believe it necessary to persuade the trial court that the ambiguous language, properly construed, applied only to prevailing claimants. We are considering this latter argument on appeal because it is fully briefed and can be decided on the existing record; it is closely related to the arguments DHFS did present to the trial court, and Butzlaff has not objected to DHFS presenting this argument on appeal.

such a limitation had it intended one. In the alternative, Butzlaff argues that if the statute is ambiguous, extrinsic aids resolve the ambiguity in his favor.

We conclude that § 103.10(13), STATS., is ambiguous as to whether an employee may file a civil action for damages even if he or she has not prevailed in the administrative proceeding and judicial review, because the construction advanced by each party is reasonable. Butzlaff's construction is reasonable because the legislature did not expressly limit the right to bring a civil action to those employees who have been successful in the administrative proceeding and judicial review. However, we cannot agree that this is the only reasonable reading. Suit under subsec. (13) is permitted "to recover damages caused by a violation of sub. (11) after the completion of an administrative proceeding, including judicial review, concerning the same violation." However broadly or narrowly "damages" is interpreted, it commonly refers only to monetary relief. *See School Dist. v. Wausau Ins. Co.*, 170 Wis. 2d 347, 368, 488 N.W.2d 82, 89 (1992). Therefore, important forms of relief typically sought in actions concerning employment disputes, such as reinstatement, appear not to be available in the civil action. Because the civil action is permitted only after the administrative proceeding and judicial review and does not afford the full range of remedies for an employee, it is reasonable to read "caused by a violation of sub. (11)" to mean that there has already been a determination in the administrative proceeding and judicial review of a violation of subsec. (11), and the purpose of the civil action is to obtain relief that was not available in that prior proceeding.

A study of § 103.10(12), STATS., sheds some additional light on legislative intent.[4] That subsection provides, in detail, for the filing of a complaint with the

[4] Section 103.10(12), STATS., provides:

(12) ADMINISTRATIVE PROCEEDING. (a) In this subsection, "department" means:

1. The personnel commission, if the employe is employed by the state or any office, department, independent agency, authority, institution, association, society or other body in state government created or authorized to be created by the constitution or any law, including the legislature and the courts.

2. The department of industry, labor and job development, if the employe is employed by an employer other than one described in subd. 1.

(b) An employe who believes his or her employer has violated sub. (11) (a) or (b) may, within 30 days after the violation occurs or the employe should reasonably have known that the violation occurred, whichever is later, file a complaint with the department alleging the violation. Except as provided in s. 230.45 (1m), the department shall investigate the complaint and shall attempt to resolve the complaint by conference, conciliation or persuasion. If the complaint is not resolved and the department finds probable cause to believe a violation has occurred, the department shall proceed with notice and a hearing on the complaint as provided in ch. 227. The hearing shall be held within 60 days after the department receives the complaint.

(c) If 2 or more health care providers disagree about any of the information required to be certified under sub. (7) (b), the department may appoint another health care provider to examine the child, spouse, parent or employe and render an opinion as soon as possible. The department shall promptly notify the employe and the employer of the appointment. The employer and the employe shall each pay 50% of the cost of the examination and opinion.

(d) The department shall issue its decision and order within 30 days after the hearing. If the department finds that an employer violated sub. (11) (a) or (b), it may order the employer to take action to remedy the violation, including providing requested family leave or medical leave, reinstating an employe, providing back pay accrued not more than 2 years before the complaint was filed and paying reasonable actual attorney fees to the complainant.

appropriate administrative agency,[5] a probable cause determination, a hearing and a written decision. Although § 103.10 does not specifically authorize judicial review of this administrative decision, judicial review is available under § 227.52, STATS.

Section 103.10(12)(d), STATS., describes the relief available in the administrative process:

> (d) ... If the department [personnel commission or Department of Labor and Job Development] finds that an employer violated sub. (11) (a) or (b), it may order the employer to take action to remedy the violation, including providing requested family leave or medical leave, reinstating an employe, providing back pay accrued not more than 2 years before the complaint was filed and paying reasonable actual attorney fees to the complainant.

At the time the FMLA was enacted,[6] federal case law established that in employment discrimination cases, back pay was considered an integral part of the equitable remedy of reinstatement, not damages. *See Bahr*, 186 Wis. 2d at 393 n.6, 521 N.W.2d at 156 (citing *Grayson v. Wickes Corp.*, 607 F.2d 1194, 1196 (7th Cir. 1979)). Also, at the time the FMLA was enacted, our supreme court had established that attorney fees were not an item of damages. *See Yanta v. Montgomery Ward & Co.*, 66 Wis. 2d 53, 63, 224 N.W.2d 389, 394 (1974). We may presume that the legislature was aware of related existing law when it enacted the FMLA. *See Wood v. American Family Mut. Ins. Co.*, 148

---

[5] The employee files a complaint with the personnel commission, if the employer is the state or a body in state government, or the Wisconsin Department of Labor and Job Development, for all other employers. Section 103.10(12)(a), STATS.

[6] 1987 Act 287, enacted April 15, 1988.

Wis. 2d 639, 646, 436 N.W.2d 594, 597 (1989), *over-ruled on other grounds by Matthiesen v. Continental Cas. Co.*, 193 Wis. 2d 192, 202, 532 N.W.2d 729, 733 (1995). The specific remedies itemized in § 103.10(12) for the required administrative proceeding and the specification of "damages" in § 103.10(13) as the remedy in the civil action, after completion of the administrative proceeding and judicial review, suggest that the purpose of the civil action is to supplement the remedies available in the administrative proceedings. *See American Motorists Ins. Co. v. R & S Meats, Inc.*, 190 Wis. 2d 196, 214, 526 N.W.2d 791, 798 (Ct. App. 1994) (we presume when legislature uses similar but different terms in a statute it intended them to have different meanings).

For an employee that is successful in the administrative proceeding and judicial review, the damages in a civil action do supplement the relief they have already obtained. However, for the employee who has not been successful, the effect of limiting the civil action to damages means that there are critical remedies, such as reinstatement and other equitable remedies, that the employee may not obtain in a civil action. If the legislature intended, as Butzlaff argues, to give all employees, regardless of the outcome in the administrative proceeding and judicial review, the opportunity to present their case in a civil action where the rules of evidence apply, what is the purpose of limiting the remedies available in the civil action? We can discern no purpose, and Butzlaff offers no explanation of one.

In addition, the requirement of completing the administrative process, including judicial review, before filing a civil action is an indication that the legislature intended the outcome in that proceeding to have

some significance. It has none, under Butzlaff's construction of § 103.10(13), STATS., in cases where the employee did not prevail in the administrative proceeding.

The legislative history to which DHFS refers is of limited assistance in resolving the ambiguity. The version of § 103.10(13), STATS., originally introduced in the legislature provided:

> (13)  CIVIL ACTION. (a) An employe or the department may bring an action in circuit court against an employer to recover damages caused by a violation of sub. (11), regardless of whether an administrative proceeding under sub. (12) has been commenced concerning the same violation.

1987 S.B. 235.

Before this bill was introduced, a drafting attorney expressed this concern with the above language:

> Section 103.10(12) permits the department to award actual damages suffered by an employe, but the department may not assess any penalty or punitive damages against an employer. In instances where an employe can prove that his employer intentionally violated the terms of proposed s. 103.10, punitive damages could be awarded by a court under sub. (13). Employes, therefore, might be tempted to bypass the department and proceed directly in the courts.

The aide to one of the sponsoring legislators responded:

> In response to your note on p.10, we want to retain the current language. Attorneys who want punitives will get their clients into court anyway, so in these cases the administrative procedure will be a waste of time. Employes without good cases for

punitive damages won't want to incur the expense of going to court.

Senate Substitute Amendment 1 to S.B. 235, introduced about six months later, changed § 103.10(13), STATS., to its current language. DFHS has apparently not been able to locate any materials that discuss or explain this change from the original bill, and we have not been able to do so either. From the information we do have, we can tell there was a discussion on whether employees should have the option of bypassing the administrative process entirely and going directly to circuit court, and that particular debate was resolved against permitting employees to do so. This suggests that the legislature viewed the administrative process as performing an important function, and in that sense, perhaps lends some support to DFHS's position. However, this legislative history does not enlighten us on the intended effect of the administrative determination on an employee's right to file a civil action.

We recognize, as Butzlaff points out, that we have held the FMLA is to be liberally construed so as to carry out its primary intent—to create employee leave rights. *See Butzlaff v. Wisconsin Personnel Comm'n,* 166 Wis. 2d 1028, 1035, 480 N.W.2d 559, 562 (Ct. App. 1992). And we have applied that principle to arrive at an expansive rather than a narrow interpretation of which employees have certain family and medical leave rights. *Id.* However, that principle provides little guidance in resolving this particular ambiguity, because Butzlaff has already had the opportunity to prove a violation of his rights in an administrative proceeding which has been judicially reviewed, and the final determination was that his rights were not violated.

At oral argument, Butzlaff's counsel argued that the limitations in administrative hearings as compared

689

to trials in circuit court favored providing all employees with the latter option; and he suggested that in Butzlaff's case, the negative determination was the result of the looser evidentiary rules in administrative hearings and the limited scope of judicial review. But this, if true, applies with equal force to every administrative proceeding, and we know that the legislature has nevertheless chosen in many situations to make administrative hearings and judicial review the exclusive means for asserting violations of important statutory rights. *See, e.g., Bachand v. Connecticut Gen. Life Ins. Co.*, 101 Wis. 2d 617, 624, 305 N.W.2d 149, 152 (Ct. App. 1981) (concluding that the legislature intended the exclusive means for pursuing remedies for violations of the Fair Employment Act to be through the administrative agency, then called the Wisconsin Department of Industry, Labor and Human Relations).

On balance, we are satisfied that the more reasonable interpretation of § 103.10(13), STATS., is that it permits civil actions for damages only by those employees who have prevailed in the required administrative proceeding and judicial review. This interpretation gives meaning and reason to the distinction between damages and the remedies available in the administrative hearing; and to the requirement of completing the administrative process and judicial review before filing a civil action.

We therefore conclude that the trial court erred when it ruled that § 103.10(13), STATS., permitted Butzlaff to file this action. Our construction of § 103.10(13) makes it unnecessary to consider DHFS's arguments based on issue preclusion, claim preclusion and estoppel of record. We reverse the trial court's denial of

DHFS's motion for summary judgment and remand with instructions to enter an order granting that motion and dismissing the action.

*By the Court.*—Order reversed and cause remanded with directions.

DYKMAN, P.J. *(dissenting).* Most appellate judges have come to view the recent phenomena of repetitive litigation as an abomination. But that view is not necessarily shared by others, and need not be the view shared by the legislature. A different view could be that employers have the ability and resources to discriminate against their employees, and to balance an unequal contest, victims of discrimination should be given a second chance to prove their cases before a different branch of government.

I start where the majority starts—the language of the statute. Section 103.10(13), STATS., reads:

> CIVIL ACTION. (a) An employe or the department may bring an action in circuit court against an employer to recover damages caused by a violation of sub. (11) after the completion of an administrative proceeding, including judicial review, concerning the same violation.

Our first inquiry is to determine whether this language is clear and unambiguous. If a statute is clear on its face, our inquiry ends, because we are prohibited from looking beyond the unambiguous language used by the legislature. *State v. Shea*, 221 Wis. 2d 418, 425, 585 N.W.2d 662, 665 (Ct. App. 1998). Only if language of a statute is ambiguous may we look beyond the statute's language. *Id.* Statutory language is ambiguous if reasonably well-informed persons could differ as to its meaning. *Id.*

In my view, § 103.10(13), STATS., is unambiguous. I see nothing in the language of the statute that requires a litigant to be successful in an administrative proceeding before he or she may bring a civil action. The statute specifically abrogates common law estoppel and preclusion doctrines by providing that the civil action may be brought "concerning the same violation." How then can the language of the statute be ambiguous?

Contrary to established precedent, the majority proceeds with its statutory analysis without first concluding that the statutory language is ambiguous. *See Shea*, 221 Wis. 2d at 425, 585 N.W.2d at 665. Instead, the majority looks beyond the statute and recognizes that a civil action does not provide all the relief a victim of discrimination might want. While this is true, the majority assumes that no reasonable legislature would give a remedy for discrimination if it does not provide all the forms of relief that a plaintiff would want. We have often said that the legislature may attack part of a problem without solving the whole thing. *See Forest Home Dodge, Inc. v. Karnes*, 29 Wis. 2d 78, 92, 138 N.W.2d 214, 221 (1965). A logical explanation for the policy of giving a second chance to disappointed administrative plaintiffs would be that discrimination is such a noxious practice that even if one fails in the administrative arena, a victim of discrimination should be able to recover some of his or her losses, even if total recovery is infeasible.

The majority's conclusion is that the only reasonable purpose for a civil action is to obtain relief not available in a prior administrative proceeding. I challenge that conclusion. Why does the majority conclude that a reasonable legislature would give nothing but the maximum relief possible? It is ironic that this logic

prevents the unsuccessful administrative litigant from even having a chance at relief.

Just as important, the majority's method of finding ambiguity in § 103.10(13), STATS., has nothing to do with the language of the statute. Instead, the majority concludes that the result of following the plain meaning of the statute would only be partially beneficial to an unsuccessful administrative litigant. I do not believe that this is a valid method of determining ambiguity, and even if it is, it interjects the majority's policy determination that no one would want or give anything but the maximum relief possible. Though I do not agree with the policy set out in § 103.10(13), which provides for repetitive litigation, that is no reason to overturn a legislative policy favoring it. I therefore respectfully dissent from the majority opinion that concludes otherwise.