Karla HAAS, Petitioner-Respondent-Cross Appellant,

v.

## DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, EQUAL RIGHTS DIVISION, Respondent-(In T. Ct.),

## GOLD BOND ICE CREAM, INC., Appellant-Cross Respondent.†

Court of Appeals

*No. 91-0582. Oral argument September 12, 1991.—Decided December 19, 1991.*

(Also reported in 479 N.W.2d 229.)

† Petition to review denied.

For the appellant-cross respondent the cause was submitted on briefs and orally argued by *Kelly R. Bogart* of *Godfrey & Kahn, S.C.,* of Green Bay.

For the petitioner-respondent-cross appellant the cause was submitted on briefs and orally argued by *Lawrence Bensky* of *La Follette & Sinykin* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J. Gold Bond Ice Cream, Inc., appeals from a judgment in favor of Karla Haas, a former Gold Bond employee. The issue is whether Gold Bond violated the Family and Medical Leave Act (FMLA), sec.

103.10, Stats., when it discharged Haas for two absences due to morning sickness during her pregnancy and penalized her for a third absence to care for her ill child. We conclude that Gold Bond violated the act and affirm that portion of the judgment.

Haas cross-appeals from the portion of the judgment denying her request for attorney fees and expenses under the act. We reverse on this issue and remand for further proceedings.

Haas began working at Gold Bond in April, 1987, until she was fired in September, 1989. In the autumn of 1988, she was pregnant and missed work on two occasions due to morning sickness. Her son was born February 7, 1989.

Haas was a seasonal worker and normally was laid off between late November and early February each year. Gold Bond employees are recalled from layoffs based on seniority. Because Haas's superiors at Gold Bond were aware of the birth of her child in February, 1989, they did not recall her to work when her seniority rating would have allowed. Instead, they delayed her recall to April 17, 1989.

In May, 1989, Haas was placed on probation after her annual evaluation. She would not have been placed on probation but for her two absences for morning sickness, which were counted against her under Gold Bond's employee evaluation system.[1] Several weeks later, Haas

[1]Gold Bond has a system under which it evaluates and rates its employees. Each employee is evaluated by several supervisors in seven categories including attendance, initiative, concern for quality, relationships with employees, versatility, dependability and attitude. Gold Bond contends that Haas was terminated because her rankings were poor in several of these areas.

While the scoring system is cumulative, the fact remains that absences enter into the calculation, and Haas would not have

was absent from work for two days to care for her son, who was ill with pneumonia. Even though she provided a medical excuse for the absences, she was given a written warning for "excessive absenteeism." As indicated, Haas was fired in September, 1989.

She filed a complaint with the Department of Labor, Industry and Human Relations (DILHR), arguing that Gold Bond had violated her rights under the FMLA by counting family and medical leave—which are protected under the act—against her in the various evaluations leading to her termination.[2] A DILHR hearing officer concluded that Gold Bond did not violate Haas's rights. On review, the trial court concluded otherwise and reversed.

We uphold an agency's findings of fact if they are supported by substantial evidence in the record. Sec. 227.57(6), Stats. Substantial evidence is "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Bucyrus-Erie Co. v. DILHR,* 90 Wis. 2d 408, 418, 280 N.W.2d 142, 147 (1979). In

---

been placed on probation, and subsequently terminated, but for the fact that her absences for morning sickness were counted against her. Her composite score for the May evaluation would have exceeded 1.00 if the absences had not been counted and she would not have been placed on probation. (A score below 1.00 places an employee on probation.) Removing the absences from the calculation would result in a score of 1.07. We therefore conclude, as did the trial court, that the hearing officer's finding of fact that Haas was terminated for "not performing satisfactorily," rather than for "her attendance," is erroneous.

[2]Haas was not aware of her rights under the FMLA until after she was fired. Gold Bond did not personally inform her of these rights, nor did it—as the act requires—post in the workplace the official DILHR notice informing employees of their rights. *See* sec. 103.10(14), Stats.

cases involving interpretation of the FMLA, we review the examiner's conclusions of law *de novo*. *MPI Wis. Machining Div. v. DILHR,* 159 Wis. 2d 358, 366, 464 N.W.2d 79, 82 (Ct. App. 1990).

The FMLA, enacted in 1988, provides various types of job-protected unpaid leave for Wisconsin workers. Employees are allowed two weeks medical leave per year when they suffer from a "serious health condition" which makes them unable to perform their duties. Sec. 103.10(4), Stats. They are allowed six weeks per year family leave for the birth or adoption of a child. Sec. 103.10(3)(b)1 and 2. They are allowed two weeks per year to care for a sick child, spouse, or parent with a serious health condition. Sec. 103.10(3)(b)3. An employee is entitled to no more than eight weeks of family leave per year. Sec. 103.10(3)(a)3.

## FAMILY LEAVE

Gold Bond first argues that it did not interfere with Haas's family leave rights under the act when it penalized her for caring for her ill son because she had already taken more than the eight weeks of family leave allowed by statute when she was on maternity leave.[3]

The hearing officer found, however, that Haas was on lay-off status, not on maternity leave, from mid-December, 1988, until she was recalled to work on April 17, 1989. This finding is supported by substantial evidence. Haas testified that she was on lay-off status when she was hospitalized on January 28, 1989, because of high blood pressure and toxemia. She testified that Gold Bond's production manager verified her status at the

---

[3]Gold Bond concedes that the absence would otherwise be protected because pneumonia is a "serious health condition."

time, and when she returned to work after the birth of her son, her supervisor told her she did not need a doctor's excuse because she had been on lay-off, not on maternity leave. We thus conclude that there is substantial evidence in the record to support the hearing officer's finding. Thus, Haas's absence to care for her son was protected under the act.

Gold Bond disagrees. It contends that it did not deny Haas leave or in any way penalize or punish her for the absence but merely issued a written warning which "did not interfere" with her rights under the act.

The FMLA, however, provides that an employer may not in any way "interfere with [or] restrain" an employee's right to take protected leave. Sec. 103.10(11)(a), Stats. And among the leaves protected by the act are those taken to care for a child, spouse or parent with a serious health condition. Sec. 103.10(3)(b)3. We believe that Gold Bond's formal "warning" to Haas did penalize her, because the company's personnel policies treated the accumulation of such warnings as grounds for dismissal. We conclude, therefore, that Gold Bond's refusal to excuse Haas's absence to care for her child violated the act.

## MEDICAL LEAVE

Gold Bond next argues that it did not interfere with Haas's right to take medical leave under the FMLA because her morning sickness was not a "serious health condition" and thus was not protected by the act.

The act defines the quoted term as "a disabling physical or mental illness, injury, impairment, or condition" which involves either: (1) inpatient care in a hospital, or (2) outpatient care that requires continuing treat-

ment or supervision by a health care provider. Sec. 103.10(1)(g), Stats. "Disabling" is broadly defined to include "incapacitation, or the inability to pursue an occupation or perform services for wages because of physical or mental impairment." *MPI Wis. Machining Div.*, 159 Wis. 2d at 370, 464 N.W.2d at 83-84. And there is no requirement that a "serious health condition" must exist for a specific length of time before it is considered "disabling." *Id.* at 370, 464 N.W.2d at 83. Finally, we have said that the phrase " 'continuing treatment or supervision by a health care provider' contemplates direct, continuous and first-hand contact by a health care provider subsequent to the initial outpatient contact." *Id.* at 372, 464 N.W.2d at 82.

In this case, the hearing officer made the following "finding of fact":

> Haas had been absent on August 8, 1988, and September 12, 1988, because of "morning sickness" and those two absences were considered along with absences on May 22 and 23, 1989, when [Gold Bond] gave a written warning to Haas. The two absences relating to "morning sickness" were not a disabling illness contemplated by the act is [sic] not a serious medical condition.

The concluding sentence is ambiguous. It could be a factual finding: that Haas was not disabled with morning sickness on the dates in question. Or, it could be a legal conclusion: that morning sickness is not a serious medical condition under the FMLA.

Since there appears to be no real dispute that Haas was in fact ill with morning sickness on August 8 and September 12, 1988, we believe the hearing officer's determination was a legal conclusion: that, as a matter of law, morning sickness does not meet the statutory defi-

nition of a "serious health condition."[4] We review that conclusion *de novo* and we reject it.

■

Ongoing pregnancy satisfies the definition of "serious health condition" because it requires direct, continuous and first-hand contact by a physician; it is a physical condition requiring outpatient care both before and after birth. We agree with the trial court that morning sickness "appears to be precisely the type of absence the FMLA expected to be covered," and we conclude that, as a symptom of her pregnancy, it may be considered a "serious health condition" within the meaning of the act.

Even so, Gold Bond maintains that Haas was still not protected under the act because she failed to provide a medical excuse for the absences. Here, too, we disagree.

■

If an employee takes medical leave, the employer may require the employee to provide certification issued by a health care provider. Sec. 103.10(7)(a), Stats. As we have noted, Gold Bond never informed Haas in any way—either by personal notice or by posting the necessary information in the workplace (as required by the act)—that such certification was necessary for protection under the FMLA. And regardless of whether she

---

[4]Even if the hearing officer's determination were to be considered, as it was labeled, a finding of fact, it is unsupported by substantial evidence and cannot stand. The parties apparently considered the issue to be of little importance, for the evidence on the point is sparse. They agreed that on August 8, 1988, Haas was genuinely unable to work due to her morning sickness. As to September 12, they simply agreed that she called in to say she was ill with morning sickness and could not work. On this record, we cannot say that a finding that Haas was *not* ill is supported by substantial evidence.

provided a medical excuse, Haas would have been penalized for the absence under Gold Bond's policy of counting all absences—even those protected by the act—against employees in its employee evaluation process.

### CROSS-APPEAL

Cross-appealing, Haas contends that the trial court erred in declining to include consideration of her request for attorney fees and costs in its remand to DILHR. We agree and reverse on this issue.

Section 103.10(12)(d), Stats., provides: "If [DILHR] finds that an employer violated [the FMLA], it *may order* the employer to take action to remedy the violation, including providing requested family leave or medical leave, reinstating an employee, providing back pay accrued . . . and paying reasonable actual attorney fees to the complainant." (Emphasis added.)

██

The policy reasons underlying the award of reasonable attorney fees in employment discrimination actions are: (1) they help make victims whole by compensating them for actual losses sustained in the process; (2) they encourage injured employees to enforce their rights under the act; and (3) they recognize that employees suing under the act enforce not only their individual rights, but the public rights in a discrimination-free workplace as well. *Watkins v. LIRC,* 117 Wis. 2d 753, 764-65, 345 N.W.2d 482, 487-88 (1984).[5] These are

---

[5] *Watkins* involved an action brought under the Fair Employment Act, sec. 111.31, *et seq.,* Stats. Although the Fair Employment Act does not specifically authorize the award of reasonable attorney fees to prevailing plaintiffs, the supreme court held that DILHR nevertheless has the authority to award reasonable attor-

among the factors to be considered by DILHR (and reviewing courts) in deciding whether such an award is appropriate in a given case. And, as the above quotation from sec. 103.10(12)(d), Stats., indicates, the determination is discretionary with the agency.

Because DILHR ruled against Haas, the issue of attorney fees and costs never arose; the agency never exercised its discretion under the act. The trial court, considering the issue for the first time, ruled that Haas was not entitled to attorney fees because "while Gold Bond [violated] the Act it did not do so intentionally or in egregious disregard for the . . . law."

We believe it appropriate that DILHR, the agency in whom the initial decisionmaking function is reposed by law, be given the opportunity to exercise its discretion in the matter. We therefore reverse on the cross-appeal and direct the trial court to remand to DILHR with directions to consider Haas's application for fees and costs. The trial court, of course, would set any attorney fees properly recoverable by Haas for the circuit court and court of appeals proceedings.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

■■■■■■

ney fees "[b]ecause the Act is designed both to discourage discriminatory practices in the work place and to make whole anyone discriminated against." *Id.,* 117 Wis. 2d at 755, 345 N.W.2d at 483–84.

Unlike the Fair Employment Act, the FMLA specifically authorizes DILHR to award fees and costs, and we consider the reasons articulated by the supreme court in *Watkins* to be equally applicable here.