BURLINGTON GRAPHIC SYSTEMS, INC.,
Petitioner-Appellant,

v.

DEPARTMENT OF WORKFORCE DEVELOPMENT,
EQUAL RIGHTS DIVISION,
Respondent-Respondent.

Court of Appeals

*No. 2014AP762. Submitted on briefs October 20, 2014.
—Decided December 23, 2014.*

2015 WI App 11

(Also reported in 859 N.W.2d 446.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John P. Gillard, Jr.* and *Jeffrey R. Brodek* of *Brodek & Gillard, S.C.*, Racine.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Jennifer L. Vandermeuse*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. REILLY, J. This appeal raises a question of first impression that implicates two laws affecting em-

ployment in Wisconsin, the Wisconsin Family and Medical Leave Act (Wisconsin FMLA) and the Immigration Reform and Control Act of 1986. Burlington Graphic Systems, Inc., fired Karen Alvarez after she took medical leave from work. Alvarez was an undocumented worker at the time. The Department of Workforce Development found that Burlington violated the Wisconsin FMLA and ordered Burlington to take certain actions to avoid future violations of its employees' rights and to pay Alvarez's attorney fees. As an undocumented worker, Alvarez's request for back pay was denied.

¶ 2. Burlington argues that an employer cannot violate the Wisconsin FMLA by discharging an undocumented worker as that worker has no right to employment in the first instance and federal immigration law mandates the discharge. We disagree. Federal immigration law is not an absolute defense to an employer's violation of the Wisconsin FMLA. Employers must abide by the Wisconsin FMLA regardless of an employee's immigration status. The Department properly found that Burlington violated the Wisconsin FMLA and properly exercised its discretion in fashioning the remedy that it did. We affirm.

## BACKGROUND

¶ 3. Alvarez worked for Burlington for nearly ten years as a printing press operator. The record in this case establishes the following timeline of events:

Early October 2011: Alvarez's left cheek begins to swell and cause her discomfort, headaches, and blurry vision.

October 27, 2011: Alvarez visits a walk-in clinic, where an x-ray detects a glass fragment embedded in her face. Alvarez tells her supervisor at Burlington about her upcoming surgery to remove the glass fragment.

October 31, 2011: Alvarez's doctor schedules a surgical procedure to remove the glass fragment.

November 8, 2011: Alvarez has the surgical procedure.

November 15, 2011: Alvarez returns to work.

November 16, 2011: Alvarez is terminated by Burlington at the end of her shift for being late or absent too many times. Burlington counts at least one of her recovery days as an unexcused absence.

December 16, 2011: Alvarez files a Wisconsin FMLA complaint against Burlington.

January 12, 2012: The Department finds probable cause that Burlington violated the Wisconsin FMLA and certifies the matter for a hearing.

March 19, 2012: Burlington rehires Alvarez and requires her to provide documentation of her legal status as a "new employee."

March 21, 2012: Burlington terminates Alvarez when she is unable to produce documentation showing she can legally work.

¶ 4. Alvarez's Wisconsin FMLA claim proceeded to a hearing before an administrative law judge (ALJ) on April 19, 2012. At the hearing, the parties stipulated that from November 1, 2011, to the date of the hearing, "Alvarez was not legally able to accept employment in the United States."[1] Alvarez sought back pay for the

---

[1] Burlington, Alvarez, and the Department apparently share the desire not to delve into who knew what and when as to Alvarez's legal right to work. Burlington and the Department do not provide us with any record as to when Alvarez and Burlington had actual notice as to Alvarez being an undocumented worker. If Burlington knew that Alvarez was an un-

651

period between November 16, 2011, and March 19, 2012. Alvarez did not seek reinstatement.

¶ 5. The ALJ found that Alvarez had established she had a serious health condition that qualified her for medical leave and that Burlington violated the Wisconsin FMLA when it terminated her for taking time off for her serious health condition. The ALJ ordered Burlington to cease and desist from interfering with its employees' Wisconsin FMLA rights, to implement policies to teach its employees about the Wisconsin FMLA, and to pay $8868.96 in attorney fees to Alvarez's counsel. The ALJ rejected Alvarez's request for back pay on the ground that she was unauthorized to work during the period in question.

¶ 6. Burlington petitioned for judicial review of the ALJ's decision pursuant to Wis. Stat. § 227.52 (2011–12).[2] Relevant to this appeal, Burlington argued that the award of attorney fees was not reasonable as Alvarez was unsuccessful in her request for back pay due to her undocumented status. The circuit court denied Burlington's petition except as it related to the amount awarded in attorney fees, which it remanded to the Department for application of the lodestar methodology pursuant to Wis. Stat. § 814.045. Burlington appeals.

---

documented worker prior to November 2011 and yet retained her as an employee, it would be in violation of federal immigration law, *see* 8 U.S.C. § 1324a (2012); likewise, had Alvarez provided false documentation as to her legal status, she also would be in violation of federal immigration law, *see* 8 U.S.C. § 1324c. We accept for our analysis (with reluctance) the parties' stipulation that Alvarez's undocumented status was discovered on March 21, 2012, without fault by either Burlington or Alvarez.

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

652

## DISCUSSION

■

¶ 7. Burlington's principal argument is that the ALJ erred as a matter of law in determining that Burlington violated the Wisconsin FMLA and that it erroneously exercised its discretion in awarding attorney fees to Alvarez based on this mistake of law. On appeal, we review the decision of the ALJ and not that of the circuit court. *Baker v. DHS*, 2012 WI App 71, ¶ 6, 342 Wis. 2d 174, 816 N.W.2d 337. Burlington's appeal raises a question of law, and we accord one of three levels of deference to the ALJ's statutory interpretation. *Id.* Our cases are in conflict over which level of deference applies here. *Compare Richland Sch. Dist. v. DILHR*, 174 Wis. 2d 878, 891–92, 498 N.W.2d 826 (1993), *with Haas v. DILHR*, 166 Wis. 2d 288, 292–93, 479 N.W.2d 229 (Ct. App. 1991). We need not decide the level of deference to apply as even with de novo review, we conclude that the ALJ did not err.

■

¶ 8. When interpreting a statute such as the Wisconsin FMLA, we give effect to legislative intent by first looking to the language of the statute. *Butzlaff v. Wisconsin Pers. Comm'n*, 166 Wis. 2d 1028, 1033, 480 N.W.2d 559 (Ct. App. 1992). "[W]e liberally construe the FMLA because it is remedial in nature." *Id.* at 1035. Where the language yields a clear meaning, we apply the statute in accordance with this meaning and the statute's scope, context, and purpose. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶¶ 46, 48, 271 Wis. 2d 633, 681 N.W.2d 110. "A cardinal rule in interpreting statutes is to favor a construction that will fulfill the purpose of the statute over a construction

that defeats the manifest object of the act." *Watkins v. LIRC*, 117 Wis. 2d 753, 761, 345 N.W.2d 482 (1984).

¶ 9. The language of the Wisconsin FMLA is clear. The statute prohibits an employer from interfering with, restraining, or denying an employee's right to take medical leave during the period where a serious health condition renders the employee unable to perform his or her employment duties. WIS. STAT. § 103.10(4)(a), (11)(a). An employee who believes that his or her employer has violated this provision may file a complaint with the Department. Sec. 103.10(12)(b). If the Department finds that an employer violated the statute, "it may order the employer to take action to remedy the violation, including providing requested family leave or medical leave, reinstating an employee, providing back pay accrued not more than 2 years before the complaint was filed and paying reasonable actual attorney fees to the complainant." Sec. 103.10(12)(d). An "employee" is defined in relevant part as "an individual employed in this state by an employer." Sec. 103.10(1)(b). This expansive definition does not limit its application based on an individual's immigration status. The Wisconsin FMLA applies to Alvarez as an employee.

¶ 10. Burlington does not contest the ALJ's finding that Alvarez is an employee covered by the Wisconsin FMLA. Burlington's argument is that it could not violate the Wisconsin FMLA by discharging Alvarez as Alvarez had no right to employment in the United States at the time of her discharge. Burlington relies on a provision in the statute that states that an employee returning from family or medical leave is not "entitle[d] . . . to a right, employment benefit or employment position to which the employee would not have

been entitled had he or she not taken family leave or medical leave." *See* Wis. Stat. § 103.10(9)(a). Burlington argues that finding that it violated the Wisconsin FMLA when it discharged Alvarez after she returned from medical leave would confer a right or benefit upon Alvarez—employment—that she was not entitled to due to her undocumented status. Burlington is wrong.

¶ 11. Employees have the right to the protections of the Wisconsin FMLA and employers have the corresponding duty to abide by the law's requirements. The fact that undocumented workers have no right to continued employment, just as at-will employees have no right to continued employment, does not mean that employers are free to ignore employment laws. Once employed, employees (regardless of immigration status) have the right to take medical leave for the period during which a serious health condition renders them unable to perform their employment duties. Wis. Stat. § 103.10(4)(a). An employer that terminates an employee based on the exercise of his or her right to take medical leave has violated the Wisconsin FMLA and is subject to liability. *See Haas*, 166 Wis. 2d at 294.

¶ 12. Here, the ALJ found that Burlington discharged Alvarez on November 16, 2011, based on her missing at least one day of work due to medical leave for a serious health condition. Based on this factual finding, the ALJ properly determined that Burlington violated the Wisconsin FMLA when it discharged Alvarez on November 16, 2011.

¶ 13. Our interpretation of the Wisconsin FMLA is supported when considering the purposes of both that statute and federal immigration law. Burlington's application of Wis. Stat. § 103.10(9)(a) to permit the discharge of an undocumented employee for taking

medical leave would defeat the purposes of these laws. According to Burlington, an employer who employs an undocumented worker contrary to 8 U.S.C. § 1324a(a)(1) and (2) (2012) could use that violation to escape liability under the Wisconsin FMLA. Burlington's interpretation would create an incentive for employers to hire undocumented workers whose medical leave rights they could thereafter violate with impunity. We cannot countenance, and do not think that the legislature or Congress intended, such a result. *See Perales v. Reno*, 48 F.3d 1305, 1307 (2d Cir. 1995) (Immigration Reform and Control Act "undercut the incentives for illegal immigration by sanctioning employers who hire undocumented workers" (citation omitted)); *Butzlaff*, 166 Wis. 2d at 1035 (legislature's primary intent in Wisconsin FMLA "was to create employee leave rights").

¶ 14. We read the Wisconsin FMLA and federal immigration law in a way that allows both statutes to serve their respective goals. *See Racine Unified Sch. Dist. v. LIRC*, 164 Wis. 2d 567, 590–91, 476 N.W.2d 707 (Ct. App. 1991). Read together, these laws "promote dignified employment conditions" for Wisconsin workers "regardless of immigration status, while firmly discouraging the employment of individuals who lack work authorization." *Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 936 (8th Cir. 2013) (applying the Fair Labor Standards Act to award minimum wage to undocumented workers). "If an employer realizes that there will be no advantage under the" Wisconsin FMLA "in preferring [unauthorized] aliens to legal resident workers, any incentive to hire such . . . aliens is correspondingly lessened." *Id.* (alterations in original) (quoting *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 893 (1984)). Requiring an employer who illegally employs an un-

documented worker to provide fair working conditions, such as medical leave, is in harmony with federal immigration law. *See id.* at 936–37.

¶ 15. Burlington attempts to support its position with *Throneberry v. McGehee Desha County Hospital*, 403 F.3d 972 (8th Cir. 2005). *Throneberry* is inapposite to the facts and issues in this case. *Throneberry* did not involve an undocumented worker or implicate federal immigration law; *Throneberry* involved a "documented" employee who brought a claim under the federal FMLA. *Id.* at 974. Burlington's argument that it did not violate the Wisconsin FMLA because it could have discharged Alvarez due to her undocumented status is not the issue addressed in *Throneberry*. Furthermore, we are not bound by the Eighth Circuit's decisions.

¶ 16. We also reject Burlington's argument that the ALJ erroneously exercised its discretion by ordering Burlington to pay Alvarez's attorney fees. The ALJ carefully tailored the remedy in this case to account for Alvarez's undocumented status at the time of her termination. The ALJ ordered Burlington to take actions to avoid future Wisconsin FMLA violations with respect to its employees and to pay attorney fees to Alvarez's counsel so as to make Alvarez whole for successfully bringing Burlington's Wisconsin FMLA violation to light. The ALJ properly exercised its discretion in not awarding back pay to Alvarez given her undocumented status. *See Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 149–52 (2002).

¶ 17. Burlington's argument that Alvarez's failure to receive back pay renders her victory a "moral" or "technical" one that is undeserving of a fee award is contrary to the plain language of the statute, which considers attorney fees to be a "remedy" for a "violation"

657

of the Wisconsin FMLA. The ALJ reasoned that Alvarez's pursuit of her Wisconsin FMLA claim potentially benefitted other employees and Alvarez's proof of Burlington's violation warranted the remedial action of payment of attorney fees. We agree and conclude that the ALJ did not erroneously exercise its discretion in its award of attorney fees for those reasons. *See Richland Sch. Dist.*, 174 Wis. 2d at 908–09.

*By the Court.*—Order affirmed.